[L. A. No. 18378. In Bank. Dec. 2, 1942.]

ALBERT C. SELLERY et al., Respondents, v. J. E. WARD et al., Appellants.

Newton M. Todd and Fred A. Watkins for Appellants.

James E. Pawson for Respondents.

CARTER, J.—The controversy between the parties arises out of an arrangement between them and one Vosper in which each, being the owners of adjacent parcels of property, agreed to and did join in a community oil and gas lease of their respective parcels of properties to the Allied Petroleum Corporation.

On October 2, 1936, plaintiffs, defendants and Vosper (a defendant who was dismissed from the action) were the owners of groups of adjoining lots in Long Beach, California, the percentage of the area owned by each of the total area of all, being as follows, plaintiffs 44.2 per cent, defendants 44.2 per cent, and Vosper 11.6 per cent. Desiring to consolidate their property for oil and gas development purposes the parties

entered into what might be called a pooling agreement on that date. It provided that they will unite their properties in a community oil lease carrying a one-sixth royalty for a term of eighteen months and thereafter as long as oil is produced in paying quantities; that any such lease shall contain such terms "as may be agreed upon in writing by the majority in number and in area of ownership of the herein described premises, of the parties hereto, based upon the actual area of said property . . . each party hereto . . . having but one vote in such matter, or three votes in the aggregate"; that none of the parties would separately contract or lease his property for oil exploitation and that damages for the breach of that covenant would be $10,000; that any lease of the property was to contain terms to the effect that a majority of the parties would control in anything the lessors may desire to do or not do under the lease; that the agreement was to be in force until October 1, 1938, and thereafter renewed from year to year unless cancelled under certain circumstances; that until the termination of the agreement "none of the parties hereto shall put any improvements upon their said respective properties which will interfere with the making and operation of said oil and gas lease. It was further understood that some of said property was then improved, and it was agreed that said lease shall contain provision for the payment of the value of any improvements taken or destroyed, and also for the fair and proper rental for any drill site used in operating under said lease"; that a bonus received by any party for procuring a lease was to be divided, "it being the intention hereof that the parties shall share in the emoluments and results of such lease, in proportion to their said ownership"; that any lease shall provide that none of the parties would be responsible for the performance of any covenant except such as affects his property; that the royalty shall be divided between the parties in the proportion the area of their property bears to the entire property, the percentages being as heretofore mentioned.

On May 15, 1937, the parties entered into a lease as lessors with the Allied Petroleum Corporation as lessee for the development of all the property. That lease made no provision for the payment by the lessors of any rental for the parcels of the property upon which the wells would be located. The lessee agreed to pay a rental of $200 per month to all the lessors for all the property until a producing well was com-

pleted, and reasonable rental to the owner-lessor of any building or structure used by the lessee in its operations. In any matters in connection with the lease a majority of the lessors were to control.

Two producing wells were drilled by the lessee which together with the equipment of the lessee occupied all of plaintiffs' property but none of defendants' or Vosper, and royalties were accordingly paid. Plaintiffs and Vosper signed agreements for the payment of a rental of $100 per month by all of the parties to plaintiffs, for the use of their property for the wells and equipment, but upon being sent to defendants they were all ignored except the last one which they refused to sign.

Plaintiff's complaint contains six purported causes of action. The first is on a common count for the reasonable value of the use of plaintiff's premises stated at $800 for the oil development for the period commencing with the production of the wells to the trial of the action; the second was based on a claimed express contract in writing for the payment of a reasonable rental in the sum of $486.20; the third claiming $10,000 damages, was based upon the pooling agreement asserting that thereunder defendants had agreed to pay a reasonable rental for the use of whatever property was used by a lessee for oil development and further that the amount was fixed by plaintiffs and Vosper, but defendants refused to abide by the majority control; the fourth is substantially the same as the third but no damages are claimed; the fifth was for $486.20, claiming plaintiffs would not have made the lease with the Allied Petroleum Corporation if they had not relied upon representation by defendants that they would pay a reasonable rental; the sixth alleges that the pooling agreement created a partnership between the parties and a majority of the partners agreed to a rental of $100 per month. The prayer was for specific performance of the pooling agreement or $10,608 damages for its breach, for the reasonable rental value of plaintiffs' property, and that defendants be estopped from denying the validity of the agreement, and such other relief as might be proper.

The court awarded judgment in the sum of $1,016.60 on the first cause of action apparently being of the view that fairness demanded that plaintiffs receive a reasonable rental from the defendants and Vosper for the use of their land by the

lessee for oil development. It also found that the parties by the pooling agreement were engaged in a joint venture, and the majority in number controlled. At an early stage in the trial, and during the opening statement of counsel, the court expressed the view that plaintiffs were entitled to a fair rental under the first cause of action, and thereafter the trial proceeded on that theory. Later plaintiffs' counsel stated that they were abandoning the other causes of action in view of the foregoing comment of the court and that he thought they should dismiss the other causes without prejudice. Although no formal dismissal by plaintiffs appears in the record, the judgment recited that all the causes except the first had been dismissed without prejudice. It is suggested that inasmuch as the demand on the first cause of action and the judgment based thereon was for less than $2,000, the Municipal Court in the city of Los Angeles had jurisdiction and therefore the superior court in which the action was tried lacked jurisdiction; that the abandonment of the other causes of action during the trial deprived the court of jurisdiction. Some of the other causes of action in plaintiffs' complaint are concededly within the jurisdiction of the superior court and not the municipal court.

 The superior court clearly had jurisdiction.

 Where the action is brought in good faith and the cause of action stated is within the jurisdiction of the court in which it is commenced, the mere fact that the judgment is for less than the jurisdictional amount of that court does not establish that it was without jurisdiction. (*Jackson* v. *Whartenby,* 5 Cal. 94; *Solomon* v. *Reese,* 34 Cal. 28; *Derby* v. *Stevens,* 64 Cal. 287 [30 P. 820]; *San Jose Pacific B. & L. Assn.* v. *Corum,* 2 Cal.App.2d 276 [37 P.2d 866]; *Ross* v. *McDougal,* 31 Cal.App.2d 114 [87 P.2d 709]; *Becker* v. *Superior Court,* 151 Cal. 313, 316 [90 P. 689]; *Gardiner* v. *Royer,* 167 Cal. 238 [139 P. 75]; *Harris* v. *Seidell,* 1 Cal.App.2d 410 [36 P.2d 1104); *Wells Fargo Bk. & U. T. Co.* v. *Broad,* 3 Cal.App.2d 45 [39 P.2d 241]; *Rosenkranz* v. *Bentley,* 220 Cal. 529 [31 P.2d 782].) Ordinarily the relief claimed when the action is instituted determines the jurisdiction of the court over the subject matter for the entire proceeding. (*Rosenkranz* v. *Bentley, supra; Gardiner* v. *Royer, supra; Ross* v. *McDougal, supra; Wells Fargo Bk. & U. T. Co.* v. *Broad, supra; Turley* v. *Roberts,* 99 Cal. App. 71 [277 P. 878];

*Bank of America, etc., Assn.* v. *Ames,* 18 Cal. App.2d 311 [63 P.2d 1208]; *Rodley* v. *Curry,* 120 Cal. 541 [52 P. 999].)

▆▆ To ascertain the nature of and amount in controversy for determining the jurisdiction of the subject matter the complaint as a whole may be examined. (*San Jose Pacific B. & L. Assn.* v. *Corum, supra; Consolidated, etc., Co.* v. *Superior Court,* 189 Cal. 92 [207 P. 552]; *Demartini v. Marini,* 45 Cal.App. 418 [187 P. 985].)

▆▆ The situation in the instant action is no different from the ordinary case in which the relief granted by the judgment is of an amount or character which if it appeared to be the matter in controversy when the action was instituted the court would lack jurisdiction. In such a case the court has jurisdiction if the relief sought is within the jurisdiction of the court when the action is commenced. A case very similar to the instant case is *Rodley* v. *Curry, supra,* where this court held that the superior court had jurisdiction to render judgment for less than $300 where the demand in the complaint exceeded $300, but plaintiffs' counsel stated at the trial that the amount involved was less than $300 due to a mistake by plaintiff in calculation discovered after he had commenced his action. The foregoing conclusion is indicated by section 396 of the Code of Civil Procedure providing for the transfer to the proper court rather than dismissal of an action where the court in which it is pending is without jurisdiction. It is provided in that section that where an action is commenced in a court which lacks jurisdiction of the subject matter "as determined by the complaint or petition," the action shall be transferred; that "If an action . . . is commenced in . . . a court which has jurisdiction of the subject matter thereof as determined by the complaint or petition, and it thereafter appears from the verified pleadings, or at the trial, or hearing, that the determination of the action . . . or of a counterclaim, or of a cross-complaint, will necessarily involve the determination of questions not within the jurisdiction of the court, in which the action . . . is pending, the court, whenever such lack of jurisdiction appears, must suspend all further proceedings therein and transfer the action . . . to a court having jurisdiction thereof which may be agreed upon by the parties, or, if they do not agree, to a court having such jurisdiction which is designated by law as a proper court for the trial or determination thereof. . . .

"Nothing herein shall be construed to require the superior court to transfer any action or proceeding because the judgment to be rendered, as determined at the trial or hearing, is one which might have been rendered by a municipal or justices' court in the same county or city and county." There is nothing in *Jacobson* v. *Superior Court*, 5 Cal.2d 170 [53 P.2d 756], or *Smith* v. *Chin Chew*, 81 Cal.App. 704 [254 P. 599], contrary to those views. In both of those cases the plaintiff completely failed to state a cause of action for any relief cognizable by the superior court, and in his amended complaint stated a cause which on its face was within the jurisdiction of a court other than the superior court. No such questions are here involved.

■ Plaintiffs advance two theories to support their judgment. First, that equity and justice require that an agreement be implied between them, defendants and Vosper, to pay a reasonable rental to the owner of the particular property used for the oil development. Second, that the majority of the parties to the pooling agreement control, and therefore the decision of Vosper and plaintiffs to pay the latter a rental of $100 per month for the use of their property as a drilling site is binding upon defendants.

We are unable to find any basis upon which the judgment may be affirmed. The pooling agreement and lease and other circumstances, rather than furnishing a basis for an implied agreement on the part of the parties to pay a reasonable rental for the property selected by the lessee for well sites, point to the absence thereof. At the time the pooling agreement was made no particular lessee was in the minds of the parties. No part of that agreement intimates that such a rental was to be paid as between the parties. On the contrary the only mention of a rental for the property used by a lessee as a site for operations, stated that none of the parties shall put any improvements on their property which shall interfere with any lessee in his operations and: "It is . . . agreed that some of said property is now improved, and it is agreed that said *lease* shall contain provision for the payment of said *improvements* taken or destroyed, and also for fair and proper rental for any drill site used in operating under said lease." After its execution a lease of the property was given to the Allied Petroleum Corporation. That lease was, of course, signed by plaintiffs, defendants and Vosper. It demised the

property as a unit and left to the *lessee* the determination of the place upon the property that operations should be conducted. The lessors reserved the right to use the surface insofar as it did not interfere with the exercise by the lessee of its rights. The lessee agreed to pay a reasonable rental for the use of any building on the demised premises, and to compensate the owner thereof for any buildings moved or destroyed. Nothing is said in the lease concerning payment by either the lessee, or the lessors between themselves, of a reasonable or any rental for the portion of the property used as a site for lessee's operations.

Whether the pooling agreement be deemed to have made the parties joint adventurers as urged by plaintiffs and found by the trial court, or constituted a general or mining partnership is immaterial. The rights to rental that might exist by implication if one of those relationships existed is not important for the reasons heretofore discussed showing that the only reasonable interpretation of the arrangement between the parties indicates an intent contrary to such implication. It is quite apparent that the parties were willing to sign the lease and take their chances in regard to which one's property would be used for operations. In return they would receive the benefit of the royalties regardless of the portion of the property having producing wells.

The contention that the agreement between Vosper and plaintiffs that the latter were to receive $100 per month rental for their property may support the judgment is equally without merit. Defendants did not sign that agreement and never assented thereto. The provisions in the pooling agreement and lease with respect to joint control by a majority of the parties, did not authorize plaintiffs and Vosper to make such agreement binding upon defendants. The making of decisions by a majority pertained only to dealings with the lessee and the provisions of the lease with respect to it and not as between the lessors. The reference to joint control in the pooling agreement states that any *lease* of the property should contain such covenants as may be agreed upon in writing by the majority of the parties, that the majority shall have the right to take such action as is necessary to enforce the lease, "and in all things herein wherein it is provided that the lessors may do or not do anything such majority in number and area shall have the right, and are hereby author-

ized and empowered, to act on the part of all the lessors herein; and the lessee also agrees to and shall be bound by, the provisions of this clause.'' The only provision on the subject in the lease reads: ''It is understood and agreed that a . majority in interest and number of the Lessors hereunder shall at all times prevail concerning any matters in connection herewith, and that Lessee hereunder shall at all times during the term hereof deal with such majority in number and persons owning a majority acreage or square footage hereunder. The decision in writing of such majority, filed with the Lessee, shall be as to all matters in connection herewith, binding upon all the Lessors hereunder.''

As there is no provision in either the agreement or lease for the payment of rental by the owner-lessor whose property was not used in connection with the oil development to the owner-lessor whose property was so used, and the conduct of defendants was not such as to create an implied promise on their part to pay such rental, it follows that there is no basis in law for the judgment in favor of plaintiffs, and it must therefore be reversed.

It is so ordered.

Shenk, J., Curtis, J., and Edmonds, J., concurred.