[No. S014626. Apr. 1, 1991.]

MICHAEL WALKER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
RESIDENTIAL CONSTRUCTION ENTERPRISES et al., Real
Parties in Interest.

CHARLENE WHITE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
CHARLES D. SLATON et al., Real Parties in Interest.

COUNSEL

Weldon Diggs, Linda M. Wilde, Richard L. Garrigues and Frank M. Harford for Petitioners.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent

Anderson, McPharlin & Conners, Ann Graupmann and Patrick J. Hast for Real Parties in Interest.

OPINION

LUCAS, C. J.—We granted review to resolve a conflict in the Courts of Appeal concerning interpretation of Code of Civil Procedure section 396, which governs the transfer of cases from the superior court to the municipal court when an action fails to meet the superior court's jurisdictional requirement of an amount in controversy exceeding $25,000. (All further statutory references are to this code unless otherwise indicated.)

██ One line of decisions, followed by the Court of Appeal in the present case, holds that section 396 precludes transfer if the amount prayed for in the complaint meets the superior court jurisdictional requirement, and the prayer is neither fraudulent nor fictitious on its face. (E.g., *Davis* v. *Superior Court* (1972) 25 Cal.App.3d 596, 599-601 [102 Cal.Rptr. 238] (hereafter *Davis*).) Respondent superior court, represented in this proceeding by county counsel, interprets a recently developed contrary view of section 396 as permitting transfer if it appears to the superior court after a hearing that a judgment in excess of $25,000 is "unlikely" or "not

reasonably probable." (E.g., *Williams* v. *Superior Court* (1989) 216 Cal.App.3d 378, 381, 382 [264 Cal.Rptr. 677] (hereafter *Williams* (*RD Instruments*)), following *Campbell* v. *Superior Court* (1989) 213 Cal.App.3d 147 [261 Cal.Rptr. 509] (hereafter *Campbell*).)

We conclude the former line of cases construes the statute too narrowly, but that respondent interprets the latter too broadly; we shall construe section 396 as requiring transfer when (i) the absence of jurisdiction is apparent before trial from the complaint, petition, or related documents, *or* (ii) during the course of pretrial litigation, it becomes clear that the matter will "necessarily" result in a verdict below the superior court jurisdictional amount, and the court affords the parties an opportunity to contest transfer. Applying these principles to the present actions, we conclude the superior court abused its discretion in ordering transfer, and accordingly affirm the judgment of the Court of Appeal.

## I. *Facts and Procedure*

Both matters arise from automobile accidents. In each case the petitioner sued to recover damages for personal injuries. The respective records are very sparse and contain no reported hearings. We must therefore rely on the uncontested factual representations in the briefs. They disclose the following:

### A. *Walker*

Petitioner Walker, while riding a motorcycle, was struck by a car driven by an employee of real parties in interest Residential Construction Enterprises and Larry Millikin (hereafter, collectively, RCE). He was thrown onto the hood of the car and landed on the roadway, allegedly causing injuries to his knee, neck, and back. He sued for unspecified medical expenses, lost earnings, property damage, and general damages. RCE filed answers asserting, inter alia, comparative fault on petitioner's part. In a subsequent at-issue memorandum petitioner claimed general damages of $1 million, continuing medical damages of over $6,000, over $1,800 in continuing lost earnings, and property damage of $750. At some point he entered into a $15,000 settlement with RCE's employee and continued to pursue his action against RCE.

The matter was referred to arbitration, at which petitioner revised his claim for general damages to $250,000. Ultimately petitioner received a $30,000 arbitration award that, less the $15,000 settlement from the employee, amounted to a $15,000 award against RCE. Both petitioner and RCE sought a trial de novo. Thereafter Judge Workman of respondent Los

Angeles Superior Court conducted two settlement conferences with the parties and ordered them to attend a "voluntary" settlement conference. The settlement conference was conducted before two pro tempore judges, who recommended a settlement of $25,000.

When the parties next appeared before the court at a status conference, petitioner's counsel mentioned the settlement recommendation of $25,000. The court reviewed the file, questioned counsel, expressed skepticism about petitioner's claimed medical expenses and lost wages, and determined that the case did not meet the superior court's amount-in-controversy minimum of a claim in excess of $25,000. A few days later, without holding a hearing or affording the parties an opportunity to further address the issue, the court ordered the matter transferred to the municipal court. At the same time the court issued an order to show cause regarding that transfer and set a hearing on the matter for a future date.

Petitioner initiated the present action for a writ of mandate directing the superior court to set aside its transfer order and to vacate the hearing date on the order to show cause regarding the transfer.

B. *White*

Petitioner White was a pedestrian crossing a street when she was struck by a car driven by real party in interest Charles D. Slaton. Her complaint asserted she was "in a cross-walk" at the time of the impact, and prayed for damages "according to proof" for wage loss, hospital and medical expenses, loss of earning capacity, loss of use of property, and general damages.

The matter was referred to arbitration. The Slatons asserted petitioner was not in a crosswalk at the time of the impact. Petitioner presented claims for medical bills over $17,000 and sought more than $10,000 in lost wages; it is unclear whether she also presented claims for general damages. The arbitrator awarded petitioner $25,000 plus costs and noted, "Principles of comparative fault have been applied." Petitioner prepared a motion for trial de novo but did not file it, assertedly because she learned that the Slatons had moved for a trial de novo. Thereafter, on a date scheduled for a status conference, Judge Kakita of respondent superior court reviewed the case, including the arbitration award, questioned counsel for both parties, and ordered the matter transferred to the municipal court for failure to meet the jurisdictional amount-in-controversy requirement of the superior court.

Petitioner initiated the present action for a writ of mandate directing respondent to set aside its transfer order. The Court of Appeal consolidated the matter with Walker, issued a stay of hearing in the latter action, issued

alternative writs of mandate in both matters, and eventually filed an opinion granting the requested writs in both matters.

## II. *Analysis*

### A. *Superior court jurisdiction and section 396*

■ "Superior courts have original jurisdiction in all causes except those given by statute to other trial courts." (Cal. Const., art. VI, § 10.) In section 86, subdivision (a)(1), the Legislature has defined municipal court jurisdiction as "cases at law in which the demand, exclusive of interest, or the value of the property in controversy amounts to twenty-five thousand dollars ($25,000) or less . . . ." Accordingly, superior court jurisdiction requires an amount in demand exceeding $25,000.

Section 396 governs transfer of matters to and from the superior court. The first, second, and fifth paragraphs of that section are particularly germane. The first paragraph provides: "If an action or proceeding is commenced in a court which lacks jurisdiction of the subject matter thereof, as determined by the complaint or petition," the action "shall" be transferred to a court having jurisdiction.

The second paragraph states: "If an action or proceeding is commenced in . . . a court which has jurisdiction of the subject matter thereof as determined by the complaint or petition, and it thereafter appears from the verified pleadings, or at the trial, or hearing, that the determination of the action or proceeding . . . will necessarily involve the determination of questions not within the jurisdiction of the court, in which the action or proceeding is pending, the court, whenever such lack of jurisdiction appears, must suspend all further proceedings therein and transfer the action or proceeding . . . to a court having jurisdiction thereof . . . ."

The fifth paragraph of section 396 provides: "Nothing herein shall be construed to require the superior court to transfer any action or proceeding because the judgment to be rendered, as determined at the trial or hearing, is one which might have been rendered by a municipal or justice court . . . ."[1]

### B. *Interpreting section 396*

Petitioners, citing, inter alia, *Davis, supra,* 25 Cal.App.3d 596, 599-600, and *Depretto* v. *Superior Court* (1981) 116 Cal.App.3d 36, 39 [171 Cal.Rptr.

---

[1] Respondent, citing what it concedes to be "vague and general" language contained in legislative findings set out in Government Code, former section 68601, asserts there is authority in the Trial Court Delay Reduction Act (*id.,* § 68600 et seq.) for the decision we reach today. We fail to discern such authority in the act, and rest our decision solely on section 396.

810], assert that if the amount claimed is calculated in good faith and is supported by allegations, the sole determinant of jurisdictional value is the amount prayed for in the complaint or in other pleadings (see § 425.10, subd. (b)). They conclude that because Walker's at-issue memorandum and White's claims asserted during arbitration were in good faith and supported by allegations, and both exceeded $25,000, the superior court was compelled to retain the two matters.

It is true that *Davis* cited cases and contains language supporting such a restrictive interpretation of section 396. (*Davis, supra,* 25 Cal.App.3d at p. 600, quoting *Rodley* v. *Curry* (1898) 120 Cal. 541, 543 [52 P. 999] [" 'It is so well settled that the amount for which judgment is demanded in the complaint determines the jurisdiction of the court that no authorities need be cited. Any other rule would be fraught with uncertainties and mischiefs beyond the power of application.' "]; see also *Depretto* v. *Superior Court, supra,* 116 Cal.App.3d at p. 39 [quoting from *Davis*].) But *Depretto* did not even cite section 396 and appears readily distinguishable.[2] And on closer inspection, *Davis* is also distinguishable. It focused exclusively on the first paragraph of section 396, and ignored the second paragraph of that section (*Davis, supra,* 25 Cal.App.3d at p. 599); accordingly, it did not address the issue before us, namely, whether a superior court may ground a transfer on information obtained other than through the "complaint or petition" or other "verified pleadings."

Likewise, none of the cases cited in *Davis* or by petitioners addressed the issue before us. ■■ ■ ■ Many predated section 396 and thus obviously do not inform our interpretation of that section (e.g., *Rodley* v. *Curry, supra,* 120 Cal. 541, 542-543; *Becker* v. *Superior Court* (1907) 151 Cal. 313, 315-318 [90 P. 689]).[3] Others did not involve or even cite section

---

[2] As noted in *Campbell, supra,* 213 Cal.App.3d 147, 152, footnote 1: "The exact basis of *Depretto*'s holding is unclear. While the case appears to set aside the transfer because the trial judge accepted the arbitrator's award of $6,000 as the fixed value of the case, the opinion suggests another basis for the result. At the time the plaintiff filed her complaint, the jurisdictional minimum of the superior court was $5,000. During the pendency of the case, the Legislature raised the minimum to $15,000, well above the arbitration award, but the trial judge apparently overlooked the legislative declaration that the new limits would not affect cases already filed. (See discussion, *Depretto, supra,* 116 Cal.App.3d at p. 38.) Thus, without regard to the legitimacy of the trial court's transfer power, the *Depretto* court would have set aside the transfer for failure to heed [the] legislative declaration of nonretroactivity of the increase of the jurisdictional limit."

[3] Under the case law predating the statute, a plaintiff's failure to secure a verdict over the superior court's jurisdictional amount did not divest the superior court of jurisdiction. (See, e.g., *Jackson* v. *Whartenby* (1855) 5 Cal. 94, 95; *Gardiner* v. *Royer* (1914) 167 Cal. 238, 244 [139 P. 75].) Contrary to suggestions by petitioners, section 396 did not codify this common law rule. The Legislature's intent to depart from the common law rule is evident from its use of the phrase, "[n]othing herein shall be construed to *require* . . .," in paragraph 5 of section

396 (e.g., *Montalvo* v. *Zamora* (1970) 7 Cal.App.3d 69, 76-77 [86 Cal.Rptr. 401]). Still others focused exclusively on the first paragraph of section 396, holding the superior court erred in failing to recognize that the pleadings established jurisdiction (e.g., *Allstate Leasing Corp.* v. *Smith* (1965) 238 Cal.App.2d 128, 130-131 [47 Cal.Rptr. 636]; *Muller* v. *Reagh* (1957) 150 Cal.App.2d 99, 102 [309 P.2d 826]; *Schwartz* v. *Cal. Claim Service* (1942) 52 Cal.App.2d 47, 56-58 [125 P.2d 883]; *Harrison* v. *Superior Court* (1935) 3 Cal.App.2d 469, 470 [39 P.2d 825]). The rest of the cases upheld superior court jurisdiction in the face of a claim that jurisdiction is lost if damages are awarded below the superior court jurisdictional amount or if equitable relief available only in the superior court is denied (see *Sellery* v. *Ward* (1942) 21 Cal.2d 300, 304-306 [131 P.2d 550] [damage award less than jurisdictional minimum]; *Silverman* v. *Greenberg* (1938) 12 Cal.2d 252, 254 [83 P.2d 293] [jurisdiction not lost merely because plaintiffs failed to establish right to equitable relief]; *Becker, supra*, 151 Cal. 313, 315-318 [same]).

■  As noted above, the second paragraph of section 396 establishes an alternative to the first paragraph's "traditional" rule that the jurisdictional amount is generally determined by the pleadings. We believe its language is sufficiently broad to allow a trial court to "reconsider" the jurisdictional-amount question even after jurisdiction has been initially satisfied by good faith pleadings.

■  It is established that the second and fifth paragraphs of section 396 contemplate transfer for failure to satisfy jurisdictional-amount requirements. (See, e.g., *Wexler* v. *Goldstein* (1956) 146 Cal.App.2d 410, 414 [304 P.2d 41]; *Linnick* v. *Sedelmeier* (1968) 262 Cal.App.2d 12, 15 [68 Cal.Rptr. 334].) Petitioners nevertheless insist that prior to start of "the trial or hearing," a superior court has authority to transfer only if it can determine from the complaint or the verified pleadings that the jurisdictional amount of the court cannot be obtained. Although this is a plausible interpretation of the statutory scheme, it is also one that would unduly interfere with the inherent powers of the courts, and it would produce consequences which, in our view, could not have been intended by the Legislature.

■  We have often recognized the "inherent powers of the court . . . to insure the orderly administration of justice." (*Hays* v. *Superior Court* (1940) 16 Cal.2d 260, 264 [105 P.2d 975]; see also *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 635-636 [150 Cal.Rptr. 461, 586 P.2d 942] [discussing "supervisory or administrative powers which all courts possess to enable them to

396, thereby disclosing that in cases in which the jurisdictional amount will not be recovered, transfer is appropriate, albeit not mandatory. (Italics added.)

carry out their duties"]; *Millholen* v. *Riley* (1930) 211 Cal. 29, 33-34 [293 P. 69].) Although some of these powers are set out by statute (§ 128, subd. (a)), it is established that the inherent powers of the courts are derived from the Constitution (art. VI, § 1 [reserving judicial power to courts]; see *Millholen, supra,* 211 Cal. at p. 34; *Rice* v. *Superior Court* (1982) 136 Cal.App.3d 81, 89 [185 Cal.Rptr. 853]), and are not confined by or dependent on statute (see, e.g., *Bauguess, supra,* 22 Cal.3d at pp. 635-636; *Peat, Marwick, Mitchell & Co.* v. *Superior Court* (1988) 200 Cal.App.3d 272, 287 [245 Cal.Rptr. 873]; cf. *James H.* v. *Superior Court* (1978) 77 Cal.App.3d 169, 175-175 [143 Cal.Rptr. 398] [court has inherent power to hold competency hearing despite absence of express statutory authorization for such hearing].) Indeed, before adoption of section 396 in 1933, it had been recognized that transfer authority is one of the inherent powers of a court. (*People* v. *Superior Court* (1930) 104 Cal.App. 276, 281 [285 P. 871] [superior court transfer to another department of same court].)

■ Regarding the Legislature's role in enacting statutes affecting the administration of the courts, we have said: "[T]he legislature may at all times aid the courts and may even regulate their operation *so long as their efficiency is not thereby impaired.*" (*Millholen* v. *Riley, supra,* 211 Cal. at p. 34, italics added.) As explained below, however, if we were to adopt petitioners' construction of section 396 we would have to conclude that the statute substantially impairs the efficiency of respondent court.

In its supplemental briefs respondent informed us that it has adopted local rules under which a pretrial hearing is held in each case to determine, inter alia, whether the matter should be transferred to the municipal court. We are further informed that over 3,000 matters each year have been transferred under this program. Apparently respondent is of the view that use of such a procedure and transfer authority is a necessary and efficient administrative tool without which it would be less able to effectively dispense justice in the cases that are properly before it.

We have no reason to doubt respondent's assessment of its administrative and supervisory needs. ■ Nor can it be questioned that courts have inherent authority to control their own calendars and dockets, and to inquire into their own jurisdiction (see *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 302-303 [109 P.2d 942, 132 A.L.R. 715] ["a court has inherent power to inquire into jurisdiction of its own motion"]). It follows that a court has inherent authority to conduct a "hearing" at any time in order to obtain information about whether it should exercise its transfer authority. On the assumption that the Legislature does not intend its statute to improperly impair this authority of the courts, or to produce the inefficient consequences that would flow from petitioners' narrow reading of

the statute,[4] we construe section 396 consistently with the courts' inherent power, and hold that it affirms the courts' authority to conduct a pretrial hearing in order to obtain information about whether the judgment to be rendered will justify transfer to the municipal court.[5]

Respondent observes that three recent cases—*Williams* v. *Superior Court* (1990) 219 Cal.App.3d 171 [268 Cal.Rptr. 61] (hereafter *Williams (Gemco)*), *Williams (RD Instruments)*, *supra*, 216 Cal.App.3d 378, and *Campbell* v. *Superior Court*, *supra*, 213 Cal.App.3d 147—avoid the problems discussed above and give full effect to the second and fifth paragraphs of section 396 by recognizing those provisions provide a basis for transfer for failure to satisfy the jurisdictional-amount requirement. In the first cited case, the Court of Appeal concluded the trial court abused its discretion in ordering transfer; in the latter two cases, the trial courts' exercise of discretion in ordering transfer was upheld. ▮ Respondent asserts we should follow the lead of these cases, and approve the transfers here, because the superior court in both cases properly concluded that a damage award in excess of $25,000 was "not reasonably probable."[6] We conclude that respondent's characterization of the standard for determining transfer is inconsistent with the language of section 396 and the cited cases, and that in any event respondent's proposed standard would pose serious questions under article I, section 16 of the California Constitution, and the Seventh Amendment of the federal Constitution.

---

[4] Assume, for example, that a court orders the parties to arbitration, and that an award of $1,000 is made even though the complaint claims $50,000 in good faith. Assume further that during settlement negotiations the judge becomes familiar with the facts of the case, such as a $2,000 settlement offer by the plaintiff, etc., and accordingly forms the opinion that any judgment in the case will "necessarily" fall below the superior court minimum. May the court notice a "transfer hearing" on its own motion in order to hear argument from the parties and then, if appropriate, exercise its transfer authority under the statute, or must it wait months, or maybe years, until the "trial" actually begins, at which time it can finally exercise discretion under the statute? Or, what if a party seeks to raise the transfer issue before trial? If he or she files such a motion pretrial, is the court precluded from entertaining it until the trial starts?

The same inefficient consequences could result in a case in which a venue-based subject matter jurisdictional question arose during pretrial discussions. If, for example, it suddenly became clear (months before trial, but after the pleading stage) that the action is filed in the wrong county (see, e.g., § 392), must the trial court wait until "trial" has begun before it exercises its mandatory transfer obligation under the second paragraph of section 396?

[5] Petitioners suggested at oral argument that our interpretation would result in impermissible "concurrent subject-matter jurisdiction." We perceive no such problem. Under our Constitution (art. VI, § 10), only one court—i.e., municipal or superior—has jurisdiction at any given time. Our reading of section 396 is consistent with this scheme. The Legislature has not created simultaneous jurisdiction in two courts; it has instead allowed the superior court to determine, in limited cases (see, *post*, pp. 269-270), whether to divest itself of or retain jurisdiction.

[6] Under respondent's local rules, transfer is appropriate if the superior court concludes it is "reasonably probable" the matter will result in a verdict of $25,000 or less.

As noted above, the second paragraph of section 396 provides for transfer if it appears that "the action . . . will *necessarily* involve the determination of questions not within the jurisdiction of the court . . . ." (Italics added.) This standard requires a high level of certainty that a damage award will not exceed $25,000 and is not satisfied by a finding that such an award is merely "unlikely" or "not reasonably probable."

Properly construed, *Williams* (*RD Instruments*), *supra*, 216 Cal.App.3d 378, does not endorse the "unlikely" or "not reasonably probable" test advocated by respondent. Although that court initially described *the trial court* as having concluded that damages over $25,000 were "unlikely" (*id.*, at pp. 381, 382), when it subsequently analyzed the propriety of the trial court's ruling the appellate court phrased the inquiry in terms of whether damages over $25,000 "could be proven" (*id.*, at p. 386) and whether such damages "could not be obtained" (*id.*, at p. 385). Even more appropriately, the court in *Campbell*, *supra*, 213 Cal.App.3d 147, stated the test in terms of whether "lack of jurisdiction is clear" (*id.*, at p. 153), whether a $25,000 verdict "was virtually unattainable" (*id.*, at p. 154), and whether such a verdict "simply could not be obtained" (*id.*, at p. 155; *accord*, *Williams* (*Gemco*), *supra*, 219 Cal.App.3d at p. 178 [citing with approval *Campbell*'s phrasing of the test]). These latter articulations of the standard comport with section 396's requirement that before transfer may occur under the second paragraph of that section, a court must determine that "the action . . . will *necessarily* involve the determination of questions not within the jurisdiction of the court . . . ." (Italics added.)

Petitioners insist that allowing the superior court to transfer matters based on a hearing held in that court denies a plaintiff the constitutional right to jury trial under article I, section 16 of the California Constitution. They quote *Davis*, *supra*, 25 Cal.App.3d 596, 600: "To permit the setting judge to determine *sua sponte* that an alleged claim is unfounded or fraudulent is to deny the plaintiff his right to a jury trial . . . . 'In no case is it permissible for the court to substitute itself for the jury, and compel a compliance on the part of the latter with its own view of the facts in evidence, as the standard and measure of that justice, which the jury itself is the appointed constitutional tribunal to award.' ([*Barry* v. *Edmunds* (1886)] 116 U.S. [550,] 565 [29 L.Ed. 729, 734, 6 S.Ct. 501].)" The *Davis* court concluded, "Pain and suffering are not subject to precise measurement by any scale, and their translation into money damages is peculiarly the function of the trier of the facts." (25 Cal.App.3d at p. 601.)

Petitioners' concerns are legitimate, but they ignore both the limited scope of section 396 and a crucial safeguard contained therein. Section 396 does not permit a trial judge to determine the merits of a claim, and thus

does not intrude on the right to jury trial (which, we note, may also be obtained in municipal court). Still, it has been recognized that when a trial court inquires into the facts of a case in order to determine amount in controversy, the court runs the risk of depriving a plaintiff of the right to a jury trial in the forum of choice. (See, e.g., *Nelson* v. *Keefer* (3d Cir. 1971) 451 F.2d 289, 295; Comment (1972) 47 N.Y.U. L. Rev. 349, 352.) Because of this potential, courts have imposed a high standard on a trial court's determination that a matter does not meet minimum amount-in-controversy requirements.

Accordingly, in the federal courts, it has been held that to protect against undue intrusion into matters that should be resolved by a jury, the absence of jurisdiction must be established to a "legal certainty." (E.g., *St. Paul Indemnity Co.* v. *Cab Co.* (1938) 303 U.S. 283, 288-289 [82 L.Ed. 845, 848, 58 S.Ct. 586].) Professor Wright, in language especially appropriate to respondent's assertions regarding the appropriate standard in the present case, has expressed the point as follows: "The court may believe it highly unlikely that plaintiff will recover the amount demanded, but this is not enough to defeat jurisdiction, unless it appears to a legal certainty that plaintiff cannot recover the amount which he has demanded." (Wright, Law of Federal Courts (4th ed. 1983) § 33, p. 184.) In the same fashion that the federal courts' "legal certainty" test guards against undue deprivation of the jury trial right, section 396's high standard—i.e., the requirement of a conclusion that resolution of the action will *necessarily* involve determination of questions outside the jurisdiction of the court—accomplishes the same protective purpose.

Against this background, it has long been held that a federal district court may determine a jurisdictional-amount issue without submitting that question to a jury (e.g., *Wetmore* v. *Rymer* (1898) 169 U.S. 115, 121 [42 L.Ed. 682, 684, 18 S.Ct. 293]; *Gibbs* v. *Buck* (1939) 307 U.S. 66, 71-72 [83 L.Ed. 1111, 1115, 59 S.Ct. 725), and we are aware of no case holding this procedure violates the federal constitutional right to jury trial. Petitioners offer no valid reason why the same result should not obtain under section 396. We conclude section 396 permits a superior court to transfer a matter if, during the course of litigation, it reasonably concludes that the verdict will "necessarily" fall short of the superior court jurisdictional requirement of a claim exceeding $25,000.

■ Although *Williams (Gemco)*, *Williams (RD Instruments)*, and *Campbell* recognized trial courts' authority to transfer a matter pursuant to the second paragraph of section 396, all three courts expressed various concerns about proceeding under this provision. We agree that caution is

called for in this context, and we reiterate the concerns of these lower court opinions.

First, all three decisions emphasized the importance of proper notice to the parties. "For future cases, a noticed motion procedure would be preferable to the court proceeding sua sponte. In this way, the plaintiff will be assured of adequate notice to resist transfer . . . ." (*Campbell, supra,* 213 Cal.App.3d at p. 154, fn. 3; see also *Williams (RD Instruments), supra,* 216 Cal.App.3d at p. 386; *Williams (Gemco), supra,* 219 Cal.App.3d at p. 179.)

Second, *Campbell* suggested trial courts should exercise caution to assure that information from settlement negotiations is not improperly divulged in the context of a hearing on a section 396 matter. (213 Cal.App.3d at p. 150.) The policy reason behind the concern is plain: inappropriate disclosure might discourage plaintiffs from offering to settle below the superior court jurisdictional amount, out of fear that their offer might later be used to divest the superior court of jurisdiction.

Third, *Williams (RD Instruments)* cautioned against use of the transfer power as "an unfettered means of clearing crowded [superior court] calendars" (216 Cal.App.3d at p. 387), and *Williams (Gemco)* noted that this "extreme" authority should be sparingly used "because the transfer deprives the plaintiff from attempting to prove damages greater than those available in the municipal court" (219 Cal.App.3d at pp. 175-176). Similarly, all three cases cautioned that inappropriate transfer poses the potential of fostering inefficiency and delay if, after transfer, the plaintiff can establish a right to retransfer to the superior court. (E.g., *Campbell, supra,* 213 Cal.App.3d at p. 155.)

Finally, we note that in all three cases a record was made of the transfer hearing, thereby assisting appellate review and facilitating a determination of whether the trial judges involved in those cases were fully informed of the facts, thoroughly examined the pleadings and briefs, and considered the findings of qualified arbitrators. (*Williams (Gemco), supra,* 219 Cal.App.3d at p. 174; *Williams (RD Instruments), supra,* 216 Cal.App.3d at p. 387; *Campbell, supra,* 213 Cal.App.3d at pp. 154-155.)

C. *Application to the facts*

In the present matters, few of the above-described concerns appear to have been heeded.

1. *Noticed motion.* ▪ From the record before us it appears the noticed motion procedure urged above was employed in neither of the

present matters, despite the fact that, according to respondent, in each case the superior court was aware of *Campbell* (*supra*, 213 Cal.App.3d 147) and based its ruling on that decision. Still, it is evident from uncontested assertions in respondent's brief that petitioners in each matter had an opportunity to respond to the superior court's concerns and thereby resist transfer. Neither petitioner claims prejudice based on inadequate notice or the absence of an opportunity to respond or be heard on the jurisdictional-amount issue. Accordingly, we conclude that neither petitioner was surprised by the superior court's action and that no denial of due process resulted in either case. For the future, however, we hold that after such a jurisdictional issue is raised, the parties should be allowed sufficient opportunity to respond and offer reasons why transfer should or should not be ordered.

2. *Hearing on the jurisdictional-amount issue.* ▮▮▮ The standard for reviewing an order transferring a case to the municipal court is abuse of discretion. (*Campbell*, *supra*, 213 Cal.App.3d at p. 153; *Williams* (*RD Instruments*), *supra*, 216 Cal.App.3d at p. 383.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478-479 [243 Cal.Rptr. 902, 749 P.2d 339].)

As noted above, no record was made of the transfer hearings in Walker or White. Accordingly, whereas the reviewing courts in *Williams* (*Gemco*), *Williams* (*RD Industries*), and *Campbell* were able to analyze the hearing record in order to determine whether the superior court made an informed decision within its discretion, the absence of a record in these cases plainly hampers review.

▮▮▮ Still, from what we can glean from the briefs regarding the facts known to the superior court at the hearings below, we discern an abuse of discretion in both the Walker and White matters.[7] Comparison of the present matters with *Campbell* and *Williams* (*Gemco*) helps illustrate this point.

In *Campbell*, *supra*, 213 Cal.App.3d 147, the plaintiff sought damages for various nonphysical intentional torts, based mostly on insults and assertedly false accusations of shoplifting leveled against him by an employee of the defendants. The plaintiff did not request damages for medical treatment or wage loss, but merely alleged special damages for mental suffering "according to proof," and claimed general damages of $500,000 and punitive

---

[7] Counsel for respondent essentially conceded this issue at oral argument.

damages of $1 million. An arbitrator awarded plaintiff *$1,400*. The *Campbell* court concluded that in view of the low arbitration award, the absence of physical or economic harm to the plaintiff, and the trial court's apparent familiarity with the facts and background of the case, it could "not [be said] the trial court abused its discretion in finding that a superior court verdict simply could not be obtained." (*Id.*, at pp. 154-155.)

*Williams (Gemco)*, *supra*, 219 Cal.App.3d 171, stands in contrast. In that case the plaintiff sought damages for personal injuries suffered in a "slip-and-fall accident." She claimed medical expenses (over $6,000 and continuing) and lost wages (over $40,000 and continuing). Her injuries were substantiated by a medical evaluation that referred to permanent damage to her knee and restrictions on her ability to sit, stand, and squat. After she was awarded only $17,000 following arbitration, she requested a trial de novo and filed a declaration asserting she believed in good faith that the value of her claim exceeded the arbitration award, and that she expected recovery in excess of $80,000. Because the plaintiff had received an arbitration award of $17,000, however, the trial court concluded this "prior determination of an amount less than the jurisdictional limit of the superior court" justified transfer under the authority of *Campbell*, *supra*, 213 Cal.App.3d 147. (*Williams (Gemco)*, *supra*, 219 Cal.App.3d at pp. 174-175.) The appellate court disagreed: It noted that *Campbell* expressly declined to afford an arbitration award such determinative status (219 Cal.App.3d at pp. 176, 179), and found an abuse of discretion because, "[b]ased upon these uncontradicted assertions, only one inference can reasonably be drawn from the facts" (219 Cal.App.3d at p. 180), namely, it could not be said that a damage award would "necessarily" be $25,000 or less.

We conclude that *Campbell*, *supra*, 213 Cal.App.3d 147, and *Williams (Gemco)*, *supra*, 219 Cal.App.3d 171, are correctly decided, and that the present matters are more analagous to *Williams (Gemco)*. Here both plaintiffs alleged physical injury and presented claims for medical expenses and lost wages. In Walker, court-ordered settlement negotiations resulted in a $25,000 settlement recommendation, and in White, court-ordered arbitration resulted in a $25,000 award—both figures but one cent below the minimum jurisdictional amount for the superior court. Respondent's brief asserts that each of the trial judges below reviewed the files carefully, questioned counsel for all parties, and concluded that the settlement and arbitration figures were "unrealistic and out of line." Unfortunately, however, we cannot assess the propriety of these latter determinations because as noted above the record contains no transcript of the respective hearings. Under these circumstances, and in view of the settlement recommendation in Walker and arbitration award in White, we cannot agree that a verdict in each case will *necessarily* be $25,000 or less. Accordingly, we conclude the

superior court abused its discretion in transferring each case to the municipal court.

Panelli, J., Kennard, J., Arabian, J., and Baxter, J., concurred.

**BROUSSARD, J.,** Concurring and Dissenting.—Though I concur in the ultimate result reached by the majority, I must dissent from the reasoning of the opinion. I am sympathetic to the desires of superior court judges to keep their dockets free of cases that should properly be before the municipal courts. I am not persuaded, however, that Code of Civil Procedure section 396[1] was intended to or can properly be interpreted to authorize a superior court judge to transfer a case in which the complaint in good faith alleges damages greater than the jurisdictional minimum of the superior court.

## I.

The jurisdictional regime in force before section 396 was enacted squarely rejected the "true value of the case" test, which allowed courts to determine an amount in controversy in a case notwithstanding the amount stated in the demand. (See *Dashiell* v. *Slingerland* (1882) 60 Cal. 653, 656-657.) Indeed, once jurisdiction was established, it could not be divested: "Jurisdiction of the cause attaches at the time of the commencement of the action, and cannot be divested by the establishment to the satisfaction of the court of a defense to the whole or any portion of the claim, whether by demurrer, or by evidence on the trial." (*Gardiner* v. *Royer* (1914) 167 Cal. 238, 244 [139 P. 75] (hereafter *Gardiner*).)

In *Greenbaum* v. *Martinez* (1890) 86 Cal. 459 [25 P. 12] (hereafter *Greenbaum*), the plaintiff demanded an amount less than the jurisdictional minimum for the wrongful conversion of some wheat, but by alleging costs plaintiff was able to bring the total demand to an amount greater than the jurisdictional minimum. (*Id.* at p. 460.) We rejected the defendant's argument that the superior court was jurisdictionally precluded from hearing the case because the demand, exclusive of costs, failed to satisfy the jurisdictional minimum. (*Id.* at p. 463.)

We noted that costs of recovery were properly included in the demand, and that the amount demanded, "according to the settled rule in this state, constitutes the test of jurisdiction. [Citations.]" (*Greenbaum, supra,* 86 Cal. at p. 461.) With regard to the defendant's observation that this "settled rule" encouraged plaintiffs to inflate their demands to establish jurisdiction

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

in superior court, we responded: "While this may occur, yet the inevitable consequence of not being able to recover the jurisdictional sum, so as to carry costs under section 1022 of the Code of Civil Procedure, will, we apprehend, be sufficient to prevent such a practice from becoming common; and the saving of costs will compensate the defendants in the rare instances in which they may be first brought into the superior instead of the justice's court." (*Ibid.*) The holding of *Greenbaum* that the demand determines jurisdiction was reiterated in numerous cases in the succeeding decades (see, e.g., *Gardiner, supra,* 167 Cal. 238; *Rodley* v. *Curry* (1898) 120 Cal. 541 [52 P. 999]; *Hall* v. *Cline* (1920) 45 Cal.App. 616 [188 P. 295]; *Sunset Lumber Co.* v. *Dunlap* (1917) 32 Cal.App. 492 [163 P. 338]); its observation, that a denial of costs was the appropriate sanction to deter inflated demands, was eminently supported in statute.

Thus, prior to the enactment of section 396 in 1933, the cases agreed that the verified pleadings determined jurisdiction. Section 396 did not change this principle. A plaintiff was required to allege damages of at least the jurisdictional minimum to establish the superior court's "competence" to hear a case. Once this threshold criterion was fulfilled the superior court was compelled to hear the case. At the time section 396 was added, as in 1890 and today, inflated demands were discouraged through the denial of costs to the prevailing plaintiff.[2] Indeed, the fifth paragraph of section 396,[3] by ensuring that the superior court may maintain jurisdiction even if it becomes evident that the plaintiff will not recover the jurisdictional amount, confirms that no change to the rule enunciated in *Greenbaum* (*supra,* 86 Cal. 459) and *Gardiner* (*supra,* 167 Cal. 238) was intended.

The great majority of cases throughout the years since section 396 was enacted have concluded that " 'the amount for which judgment is demanded in the complaint determines the jurisdiction of the court . . . .' " (*Davis* v. *Superior Court* (1972) 25 Cal.App.3d 596, 600 [102 Cal.Rptr. 238]; see also *Sellery* v. *Ward* (1942) 21 Cal.2d 300, 304-306 [131 P.2d 550]; *Silverman* v. *Greenberg* (1938) 12 Cal.2d 252, 254 [83 P.2d 293]; *Depretto* v.

---

[2] In 1933, former section 1032, subivision (d) was added, which read in pertinent part: "if the prevailing party recovers a judgment that could have been rendered in a court inferior in jurisdiction in the county . . . , such prevailing party shall not recover costs unless the judge, . . . makes an order, allowing costs or such part thereof as he deems proper." Today, the counterpart to former section 1032, subdivision (d), is section 1033, subdivision (a), which reads: "In the superior court, costs or any portion of claimed costs shall be as determined by the court in its discretion in accordance with [the applicable procedure] where the prevailing party recovers a judgment that could have been rendered in a court of lesser jurisdiction."

[3] "Nothing herein shall be construed to require the superior court to transfer any action or proceeding because the judgment to be rendered, as determined at the trial or hearing, is one which might have been rendered by a municipal or justice court in the same county or city and county."

*Superior Court* (1981) 116 Cal.App.3d 36, 39 [171 Cal.Rptr. 810]; *Allstate Leasing Co.* v. *Smith* (1965) 238 Cal.App.2d 128, 130-131 [47 Cal.Rptr. 636]; *Muller* v. *Reagh* (1957) 150 Cal.App.2d 99, 102 [309 P.2d 826]; *Schwartz* v. *Cal. Claim Service* (1942) 52 Cal.App.2d 47, 56 [125 P.2d 883]; *Harrison* v. *Superior Court* (1935) 3 Cal.App.2d 469, 470-471 [39 P.2d 825].) Several of these Courts of Appeal have also held, more specifically, that unless the court determines that a party's claim establishing the amount in controversy is made in bad faith, the court's suspicion that the claim is inflated is an insufficient basis upon which to transfer a case. (See, e.g., *Depretto* v. *Superior Court, supra,* 116 Cal.App.3d 36, 39; *Davis* v. *Superior Court, supra,* 25 Cal.App.3d 596, 600; *Muller* v. *Reagh, supra,* 150 Cal.App.2d 99, 102; *Harrison* v. *Superior Court, supra,* 3 Cal.App.2d 469, 470-471.)

I cannot agree with the majority's assertion that for over 50 years, courts construing section 396 have misread or ignored any part of that section; indeed, I believe a plain reading of that statute does not and cannot yield the interpretation the majority adopt. Until *Campbell* v. *Superior Court* (1989) 213 Cal.App.3d 147 [261 Cal.Rptr. 509] (hereafter *Campbell*) was decided just two years ago, no Court of Appeal had ever suggested that a "true value of the case" standard could be applied in determining whether to transfer a case pursuant to section 396. A summary evaluation of *Campbell* reveals the flaws in its analysis: it cites no authority for its conclusions. Neither did it consider the history of section 396 and its precursors. *Campbell* acknowledges that the case law, in fact, is well established against the proposition it urges, but nevertheless divines the right to transfer from "the specific language of section 396." (213 Cal.App.3d at p. 151.) The language of section 396 does not authorize a superior court to determine the true value of the case. (See, *post,* at pp. 277-279.)

*Williams* v. *Superior Court* (1989) 216 Cal.App.3d 378 [264 Cal.Rptr. 677] (hereafter *Williams (RD Instruments)*) relied wholly upon *Campbell* to uphold the superior court's transfer of a case in which plaintiffs pleaded damages in excess of the jurisdictional minimum. In reaching a similar result, the Court of Appeal in *Williams* v. *Superior Court* (1990) 219 Cal.App.3d 171 [268 Cal.Rptr. 61] relied entirely upon *Campbell* and *Williams (RD Instruments)*. In short, the only precedent the majority cite is based on *Campbell*'s misreading of section 396.

I find nothing in statute or in case law, except for *Campbell, supra,* 213 Cal.App.3d 147, and the cases that followed it, that would compel or even allow the conclusion that the majority urge. Section 396 was never intended to give a superior court the authority to independently determine the "true value of the case."

## II.

Though the enactment of section 396 did not authorize the superior court to determine the true value of the case, it did change the pre-1933, common law jurisdictional regime with respect to transfer of cases. For the first time, section 396 expressly authorized *transfer*, rather than *dismissal*, of suits which failed to allege either the jurisdictional minimum or an equitable action that should properly be heard by the superior court.[4] As importantly, it provided for a transfer mechanism after jurisdiction has been established but when the pleadings subsequently demonstrate (e.g., through amendment) that no party's claim alleges the jurisdictional minimum. In this limited sense, paragraphs 2 and 5 of section 396 did effect a change in the prior law. However, the Courts of Appeal settled the meaning and application of those paragraphs over 30 years ago, and that meaning is not the one now adopted by the majority.

Paragraph 2 of section 396 provides that when it appears "from the verified pleadings, or at trial, or hearing"[5] that the determination of an action will involve questions outside of the jurisdiction of the superior court, the court "*must* suspend all further proceedings therein and transfer the action or proceeding . . . ." (Italics added.) Though paragraph 2 sets out a mandatory rule, that rule is qualified by paragraph 5, which provides that nothing in section 396 "shall be construed to require the superior court to transfer any action or proceeding because the judgment to be rendered, *as determined at the trial or hearing*, is one which might have been rendered by a municipal . . . court . . . ." (Italics added.)

A plain reading of paragraphs 2 and 5 sets forth section 396's rule of law with regard to transfer. The general rule (par. 2) *requires* the superior court

---

[4] "Jurisdictional minimum" is hereafter used to refer to both the amount *and nature* of claims brought before the superior court. Thus, I include in the phrase, "failure to allege the jurisdictional minimum," pleadings that fail to assert equitable claims that would properly put a case before the superior court.

[5] The *Campbell* court mistakenly construed the word "hearing" as used in section 396 to encompass a pretrial hearing held to determine the true value of the case before the superior court. (*Campbell, supra,* 213 Cal.App.3d at pp. 150-151.) This reading is insupportable when one views the history of section 396.

The complementary words "petition" and the forum in which a petition is brought, "hearing," were added to section 396 in 1935. "Under the 1933 provisions of section 396 there was some doubt whether the section applied to special proceedings as well as to ordinary civil actions. In 1935 the appropriate words were added to make it clear that the section does so apply." (*Legislation* (1936) 9 So.Cal.L.Rev. 240, 245.) Thus the 1935 addition of the words "or hearing" reflect nothing more than a legislative effort to accommodate the differences between "proceedings" and "actions" within the scope of the statute.

This use of the word "hearing," the asserted ambiguity on which the *Campbell* court relied, is not considered an ambiguity by the majority for the reasons discussed above.

to transfer cases in which the jurisdictional minimum was initially pled but in which subsequent pleadings render the amount in controversy less than the jurisdictional minimum. By contrast, the exception to the general rule (par. 5) "gives [superior] courts the discretion either to transfer back to the municipal courts or retain jurisdiction where what otherwise would be a lack of jurisdiction is 'determined at the trial or hearing.'" (*Wexler* v. *Goldstein* (1956) 146 Cal.App.2d 410, 414 [304 P.2d 41].) Thus in *Wexler* the court held that, since trial had begun, the superior court was not required to transfer the case before it to the municipal court even though, as a matter of law, the evidence presented at trial established that the parties' claims did not satisfy the jurisdictional minimum.

Relying on *Wexler* v. *Goldstein, supra,* 146 Cal.App.2d 410, one Court of Appeal determined that the superior court properly retained a case in which the cross-complaint had been dismissed at trial, thus rendering the only amount in issue far less than the jurisdictional minimum. (*Towle* v. *Lewis* (1969) 274 Cal.App.2d 376, 377 [79 Cal.Rptr. 124].) Conversely, Courts of Appeal have held that when, because of pretrial rulings, the amount in controversy as reflected in the pleadings is less than the jurisdictional minimum, transfer to the municipal court is mandatory. (See *Linnick* v. *Sedelmeier* (1968) 262 Cal.App.2d 12, 15 [68 Cal.Rptr. 334]; *Adams* v. *County of San Joaquin* (1958) 162 Cal.App.2d 271, 276 [328 P.2d 250].)

Paragraphs 2 and 5 of section 396 are intended to promote the efficient administration of the courts. Indeed, they serve this purpose well. If before trial the remaining pleadings establish that the amount in controversy is less than the jurisdictional minimum because, for example, a demurrer to one claim has been sustained or a cross-complaint which was the basis for the court's jurisdiction has been dismissed, there is no reason for the superior court to retain the case, and the cases make it clear that it must transfer the matter to the municipal court. If, however, the case has already gone to trial and absorbed the superior court's time and resources, it is reasonable that the superior court should retain discretion to hear the case to its conclusion.

The majority acknowledge that this reading of paragraphs 2 and 5 is "a plausible interpretation of the statutory scheme." (Maj. opn., *ante,* at p. 266.) I submit that it is not only *a* plausible interpretation of the statute, but the *only* plausible interpretation of the statute. While the majority "believe [section 396's] language is sufficiently broad to allow a trial court to 'reconsider' the jurisdictional-amount question even after jurisdiction has been initially satisfied by good faith pleadings" (maj. opn., *ante,* at p. 266), they never propose an alternate reading of the statute or even point to an ambiguity in its text. Simply put, there is nothing in the language of section 396

that authorizes a superior court to look beyond a party's good faith plead-ing and to determine the true value of the case.

## III.

The majority do not propose a reading of section 396 that would support the result at which they arrive. Instead, they abandon the settled meaning of section 396 because, if we were to affirm that interpretation, "we would have to conclude that the statute substantially impairs the efficiency of respondent court." (Maj. opn., *ante*, at p. 267.) The argument, derived from *Millholen* v. *Riley* (1930) 211 Cal. 29 [293 P. 69], arises from the constitu-tional requirement of separation of powers. As *Millholen* explained, "A court set up by the Constitution has within it the power of self-preservation, indeed, the power to remove all obstructions to its successful and conve-nient operation. This arises from the fact that it is part of and belongs to one of the three independent departments set up by the Constitution." (*Id.* at pp. 33-34.) Thus, we held in *Millholen, supra*, that the Legislature could not refuse to release funds to pay the salary of a court employee.

Far from supporting the conclusion that the majority draw today, *Millho-len* v. *Riley, supra*, 211 Cal. 29, actually relied for its holding on a case that specifically acknowledged the Legislature's primacy in determining matters of court procedure: "[t]he legislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materi-ally impair the exercise of those functions. This power has been described as follows: '. . . the mere procedure by which jurisdiction is to be exercised *may be prescribed by the Legislature, unless, indeed, such regulations should be found to substantially impair the constitutional powers of the courts, or practically impair their exercise.*' [Citation omitted.]" (*Brydonjack* v. *State Bar* (1929) 208 Cal. 439, 444 [281 P. 1018, 66 A.L.R. 1507], italics added.)

For well over a century we have acknowledged the Legislature's power to determine the procedures that the courts follow unless a statute "substan-tially impairs" the constitutional power of the courts. (See, e.g., *Ex parte Harker* (1875) 49 Cal. 465, 467; *Sacramento & San Joaquin Drainage Dist.* v. *Superior Court* (1925) 196 Cal. 414, 432 [238 P. 687].) Respected com-mentators observe that "[t]he Legislature has broad power to prescribe the procedure under which the courts exercise their constitutional or statutory jurisdiction." (2 Witkin, Cal. Procedure (3d ed. 1985) Courts, § 135, p. 157.) Indeed, even the California Constitution provides that the Judicial Council's powers to adopt rules for court administration must be "not inconsistent with statute." (Cal. Const., art. VI, § 6.)

The settled interpretation of section 396 does not substantially impair the constitutional power of the courts. It is *the superior courts* that have found it

expedient to transfer cases to *the municipal courts.* Even were such an arrangement more efficient to the court system as a whole, the Legislature might prefer for policy reasons that superior courts hear certain cases, e.g., so that plaintiffs not be denied the right to have a jury, rather than a judge, determine whether they are entitled to damages above the jurisdictional minimum of the superior court. Courts have no business substituting their own policy choices for those of the Legislature. So long as procedural statutes do not threaten to divest the courts of the powers granted to them under article VI, section 1 of the California Constitution, we are bound to enforce the statutes.

The majority today give cursory attention to the cases considering the inherent powers of the judiciary before setting forth a new, relaxed standard for determining when the Legislature has infringed upon the court's powers. Under the previously established standard, the courts would interfere with legislative mandate only where the legislation *substantially* impaired the fulfillment of the court's *constitutional duties.* Under the majority's holding, a legislative measure is subject to invalidation or reinterpretation if the court fears the measure will interfere with the " 'orderly administration of justice.' " (Maj. opn., *ante,* at p. 266.) This holding is an unprecedented invitation to the courts to engage in judicial legislation. I cannot join in it.

## IV.

It is certainly arguable that, as a policy matter, an appropriate means of dealing with the problem of inflated claims is to grant superior courts the power to transfer cases based on the court's independent evaluation of the plaintiff's likelihood of recovering damages over the statutory minimum. Yet we must also be concerned, as the facts of the present cases demonstrate, that superior courts facing heavy dockets may be tempted to transfer cases in many instances in which transfer is inappropriate. Policing unwarranted transfers will simply add to the appellate courts' burden. In any event, whatever one may think of the majority's solution as a matter of policy, I think it is clear from the wording of our current statutes that the Legislature has not yet adopted that approach.

More important, our duty is to follow the rules and procedures prescribed by statute. The courts' interest in their efficient administration does not give the judiciary license to overturn or rewrite statutes unless the fulfillment of the courts' constitutional duties is substantially impaired. Section 396, whatever its interpretation, does not threaten to substantially impair the performance of our duties under the California Constitution.

Accordingly, while I agree that the superior court erred in transferring the present cases, I do not reach that conclusion on the ground that the trial

courts abused their discretion on the facts of these cases. Rather, I conclude that under the current statutes the courts lacked authority to transfer the cases so long as the complaints in good faith pled damages within the jurisdiction of the superior court.

Mosk, J., concurred.

Petitioner's application for a rehearing by the Supreme Court was denied May 23, 1991. Broussard, J., was of the opinion that the application should be granted.