Filed 6/25/13  In re D.M. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.M. et al., Persons Coming Under the Juvenile Court Law. | B245812 (Los Angeles County Super. Ct. No. CK76884) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>L.M.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Donna Levin, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Jacklyn K. Louie, Deputy County Counsel for Plaintiff and Respondent.

## I.  INTRODUCTION

The mother, L.M., appeals from the juvenile court's order denying her Welfare and Institutions Code[1] section 388 petition as to the child, Du. M.  The mother argues it was an abuse of discretion to deny her section 388 petition seeking reinstatement of unification services and increased visitations with the child.  We affirm the order.

## II.  BACKGROUND

### A.  Section 300 Petitions and Detentions

On April 14, 2009, the Los Angeles County Department of Children and Family Services (the department) filed a petition pursuant to section 300, subdivisions (b) and (j).  The petition alleged the mother failed to obtain necessary medical treatment for Du. M.'s abdominal mass and enuresis and the child's three siblings were at risk.  In addition, the petition alleged the home was found to be in a filthy and unsanitary condition with urine odor, dirty clothes strewn throughout the home, and dirty dishes.  At the time of the detention, Du. M. was seven years old.

At the April 14, 2009 detention hearing, the children were removed from the mother's physical custody.  Du. M.'s half-sister, D.M., was released to the home of her father, Demirus M.  Du. M. and his two younger siblings, Da. M. and D.T.M., were detained in shelter care with the department having discretion to detain with any appropriate relative or non-related extended family member.  On April 22, 2009, Du. M. and his younger siblings were released to their father, Du. M., Sr., on condition that the father resided with the maternal grandmother.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

On May 11, 2009, the department filed a first amended petition. The amended petition added a new count under section 300, subdivision (b). The amended petition alleged the mother had a history of alcohol abuse and was a current alcohol abuser.

On June 26, 2009, the department filed an ex parte application and order to detain Du. M. and his younger siblings and remove them from the father's custody. The June 26, 2009 detention report stated the father argued with his girlfriend and walked away from the vehicle, leaving his three children inside the car. The father's girlfriend also left the car and did not return until 30 minutes later. The father later was arrested for child endangerment after he came to the police station to inquire about the children.

On June 30, 2009, the department filed a second amended petition. The second amended petition added a section 300, subdivision (b) count against the father for leaving the children unattended in the car for 30 minutes and inadequate care of the children. The second amended petition also alleged the father medically neglected Du. M. and kept the child out of school for a week for unknown reasons.

On June 30, 2009, the juvenile court sustained one count as to the mother under section 300, subdivision (b). The court found the mother medically neglected Du. M. by failing to obtain necessary medical treatment for the child's abdominal mass and enuresis. The mother's neglect placed the child and his siblings at risk of physical and emotional harm. The juvenile court later sustained the count against the father for: inadequate care; medical neglect of Du. M.; keeping Du. M. out of school for a week for unknown reasons; and leaving the children unattended in a car for 30 minutes.

On August 6, 2009, the department submitted a supplemental report in advance of the disposition hearing. The department reported Du. M. and his younger siblings were in a foster home. But the current foster mother wanted the children removed from her home because Da. M. kicked other children and had set off the fire alarm in the home.

The mother had visited the children just once since the last hearing. The mother stated her car broke down after that visit and she could not visit again. Also, the mother had only called the children once or twice since the last hearing. The mother just enrolled in counseling and had attended two sessions. The mother's alcohol tests had

been clean except for one missed test. However, the mother had not started parenting classes because she stated she could not afford to pay for them.

Social worker Shauna Blakely visited the mother around noon to give her the case plan. There was no furniture in the home except for the bunk beds provided by the department. Ms. Blakely had the maternal grandmother sign the case plan because the mother was sleeping and could not or would not be awakened. The department believed the mother was not ready to have the children returned to her custody. She had limited contact with the children, had just started counseling, missed an alcohol test, and had no furniture in the home other than the bunk beds.

On September 3, 2009, the department submitted a second supplemental report. The department reported the mother's home currently had more furniture. The dependency investigator and the social worker brought the mother a couch and a chest of drawers. In addition, the mother purchased a king-sized bed. The mother continued to reside with the maternal grandmother in the apartment.

The department reported the mother was visiting the children on a regular basis and continuing to attend her individual counseling. The mother missed two drug tests since the last hearing but the completed tests were clean. The department told the mother it would recommend return of the children if she enrolled in parenting classes. Ms. Blakely, the social worker, gave the mother referrals for five low cost and no cost parenting classes. The mother told Ms. Blakely she had called all five locations but there were no available spots. Ms. Blakely called and found at least three of the locations had available spots for the mother. At least one location even had child care available.

## B. Disposition on Section 300 Petition

On September 10, 2009, the juvenile court released Du. M. and his younger siblings to the mother with the maternal grandmother to reside in the home. The department was ordered to provide family maintenance services and family preservation to the family and bus tokens to the parents. The mother was ordered to attend parent

4

education classes and individual counseling to address case issues including neglect, anger management and depression. The juvenile court also ordered the mother to take the children to all medical appointments and to cooperate with the children's school and family preservation.

## C. Section 387 Supplemental Petition and Detention

On March 18, 2010, the department filed a section 387 supplemental petition. The supplemental petition alleged the mother continued to neglect Du. M.'s medical needs. The mother failed to take the child to a medical appointment to treat the child's severe stomach pain. In addition, the mother failed to provide prescription medicine to Du. M.

The March 18, 2010 detention report indicated the mother was in partial compliance with the September 10, 2010 orders. The mother was cooperative with family preservation but had cancelled and rescheduled some appointments. The mother told the family preservation worker, Melissa Arce, she had started drinking again but not in front of the children. Ms. Arce reported the children did not appear happy. She also reported the mother's new boyfriend may be living in the home and having a lot of contact with the children.

The mother admitted she did not take Du. M. to his medical appointments because she thought the maternal grandmother would take him. The doctor prescribed Miralax for Du. M.'s stomach pain but the mother did not get the drug. After a month, Ms. Blakely, the social worker, wrote the mother a check so she could get Miralax for Du. M. On March 9, 2010, the mother called Ms. Blakely to report that Du. M. did not go to school that day because he had stomach pain. Ms. Blakely told the mother to take the child to urgent care or the emergency room. Ms. Blakely called the mother the next day to follow up. The mother stated she did not take Du. M. to urgent care because they did not "specialize in this problem." Ms. Blakely urged the mother to take Du. M. to the emergency room. The mother responded she preferred the department contact the doctor to schedule an appointment for next week because she was unable to schedule one.

The department reported the children saw a therapist once a week at school. In addition, the children saw a psychiatrist monthly. The therapist reported the children seemed sad at times and worried about their mother. The school reported Du. M. and his younger sister had missed at least 15 days of school, four of which were in March. The children's grades were dropping because of the school absences. The school asked the mother to provide a note when the children missed school but she never did so.

At the March 18, 2010 detention hearing, the juvenile court detained Du. M. and his younger siblings from the mother. The three children were designated as a sibling group. The juvenile court ordered a psychological evaluation of the mother over her objection. The mother was granted unmonitored visits three times a week, three hours per visit or a total of nine hours per week.

### D. Disposition on Section 387 Petition

The April 29, 2010 jurisdiction/disposition report stated the mother admitted she had missed medical appointments for Du M. The mother stated the maternal grandmother did not tell her about the subsequent appointments and she missed them. The mother also admitted she did not take Du. M. to the emergency room as instructed by Ms. Blakely after the child complained about abdominal pain. The mother stated she gave Du. M. some milk and Miralax and he was able to go to the bathroom. The child complained bitterly about going to the emergency room and stated he felt better so the mother decided not to take him to the emergency room. The mother reported she took Du. M. for an ultrasound on April 6, 2010 and was waiting for the results.

The report indicated the mother was visiting the children on the weekends. The mother visited for about eight hours per day on either Saturday or Sunday. The maternal grandmother reported the mother was bringing the children back to her home and exposing them to her boyfriend, Richard Monroe, who had a serious criminal record. The maternal grandmother and all three children stated Mr. Monroe was hitting the children during their stay and once blew marijuana smoke at the youngest child's face.

6

The mother stated she no longer dated Mr. Monroe but this was not confirmed yet. The mother indicated she was in the process of moving and all her belongings were in boxes at her current apartment. The mother had moved at least three times over the past six months. The department also reported the mother took $10 from Du. M. that was given to him so he could purchase lunch. She used the money to put gas in her car. The department recommended the visits be changed from unmonitored to monitored visits. In addition, the department recommended family reunification services be provided to the children and the parents.

### E. Interim Review Report and Progress Reports

The August 4, 2010 interim review report stated Du. M. had been placed with David and Veronica G. The child had "umbilical cord hernia issues." He was receiving individual counseling from a therapist and had been referred for a psychological and psychiatric evaluation.

The social worker had tried to set up a meeting with the mother several times but she did not show up. The mother was transient at this time. Also, the parents were informed of all medical appointments for the children but they had not attended any appointments. The parents also had not visited the children.

At the progress hearing on September 3, 2010, the juvenile court ordered: age-appropriate mental health services for the children; Wraparound services for Du. M.; and individualized education program requests for Du. M. and Da. M. The department was to inform the court of an appropriate education rights holder if the mother failed to request educational and developmental services for the children. The department was ordered to admonish the mother to not promise the children they would return home. Also, the department was to prepare a progress report concerning: the status of the regional center evaluations of the children; the placement of the children; whether the children had individualized education programs; whether the mother was the appropriate education

7

rights holder; the mental health services and evaluations each child has had; and the mother's visits with the children.

The October 15, 2010 progress report indicated Du. M. remained with David and Veronica G. He had a mental health evaluation but the department had not received the results yet. The child continued to have individual counseling every Monday. The social worker referred Du. M. to Wraparound services. As for an individualized education program for Du. M., the assistant principal informed the social worker she did not think he would qualify for the program. Du. M. was academically in the proper grade level. The child saw his younger brother on a regular basis because his foster parents operated a daycare that the younger brother attended.

The department reported the mother had not visited her children for several months. The mother continued to miss her appointments with the social worker. The mother was transient and did not have an address. The department recommended the court appoint an educational rights holder for the three children.

The November 16, 2010 progress report stated Du. M. remained with David and Veronica G. Psychologist Luz E. Vulgaris diagnosed the child as a victim of neglect and physical abuse. Du. M. had disruptive behavior disorder, attention deficit/hyperactivity disorder, Tourette's disorder, enuresis and encopresis. The child wore diapers because he urinated and defecated in his pants daily. Du. M. tended to hide under the table when eating at home and at restaurants and slept under his bed. He told his foster parents he did these things because he was afraid of the noises he heard. He functioned within the average range of cognitive abilities and he was at grade level in reading, spelling and arithmetic skill. The child was on the waiting list for Wraparound services. In addition, he was receiving individual counseling every Monday.

The department reported the mother had made little progress towards the case plan goals. The mother had not seen the children in several months. She called the children by phone sporadically. She made appointments with the social worker but failed to show up. The mother agreed to stop telling the children that they would be returning home in December.

## F.  Six-Month Review

The December 16, 2010 status review report indicated Du. M. remained with David and Veronica G.  The child started receiving weekly Wraparound services on November 23, 2010.  In addition, he was receiving mental health services including psychiatric services.

The department reported the mother had made little progress in reunifying with her children.  The mother had yet to meet with the department social worker.  During a period of over seven months, the social worker tried to set up appointments with the mother several times.  The mother did not show up and never called to cancel the appointments.  The mother had an Evidence Code section 730 evaluation done and was diagnosed with bipolar disorder.

Also, the mother still had not visited the children.  However, the mother had called the children more often lately.  The calls were very short.  The mother told the children she would get them back in December and promised to buy them video games.  The mother denied she had made any promises to the children.

The mother was provided mental health and parenting class referrals.  But the mother had not provided any proof she was complying with court orders by participating in counseling or parenting classes.  The mother reported she was transient and did not have a place to stay.  The department recommended termination of family reunification services.  On February 7, 2011, the juvenile court terminated reunification services for the mother.  The mother was granted monitored visits, at least once a month for at least one hour per visit.

The May 6, 2011 report from Du. M.'s Court Appointed Special Advocate, Celeste Vos, (CASA) indicated the child continued to reside with David and Veronica G. The child stated he did not really like living with the foster parents because there were so many children living in the house as well as more children who came for daycare.  He wanted to live in a house that "was a little more quiet."

G.  July 22, 2011 Reports, Hearing and Section 388 Petition

The July 22, 2011 section 366.26 report indicated Du. M. remained with David and Veronica G., his prospective legal guardians.  He called his foster parents, "mom and dad."  Du. M. continued to have problems wetting the bed.  The foster parents reported he was very stubborn at times.  Du. M. reported feeling special when he celebrated his birthday with his foster family and members from the church.

The mother failed to comply with court orders to randomly drug test, participate in parent education classes, and attend individual counseling.  In addition, the mother did not take her prescribed medication or comply with psychiatric recommendations.  Also, the mother had not participated in the children's medical appointments or cooperated with the children's school.

The mother had only visited Du. M. and his younger brother twice in over one year.  Du. M. did not seem attached to the mother.  He did not cry for her or hug her.  When the mother told Du. M. he would be going back to her, he smiled but did not say very much to her.  The mother continued to promise Du. M. that he would be going back home and she would buy him video games and toys.  The foster care agency attempted to schedule visits between the children and the mother for the second Friday of each month but the mother never called to confirm the visits.  The mother called the children sporadically and continued to promise them video games and toys.  She also told the children they would be going back home with her at the next court hearing.  At times, the mother called the foster parents and cursed and yelled at them.

The July 22, 2011 CASA report stated Du. M. continued to reside with his foster parents, David and Veronica G.  The child stated he was excited to attend a summer camp for four days in July.  He was excited to finish the third grade.  Du. M. stated he enjoyed living with his foster family.  His foster parents reported he was taking his medicine but still acted out.  Du. M. lied and broke the television in the playroom.  He was book smart but socially immature.  The child was enrolled in the Boys and Girls Club for the summer

and would attend camp in July. Du. M. felt a connection with his foster family but he understood it was a temporary situation, which stressed him and affected his behavior.

At the July 22, 2011 section 366.26 hearing, the mother filed a section 388 petition seeking reinstatement of family reunification services and modification of monitored visits to four times per month. In the section 388 petition, the mother stated she was receiving psychiatric and counseling services and taking medication for her bipolar disorder. The attached July 19, 2011 letter from the South Central Health and Rehabilitation Program indicated the mother had met her case manager four times since her enrollment. The mother began psychotherapy on July 14, 2011 and had been supplied with medication for her mental illness. The juvenile court granted a hearing on the mother's section 388 petition and continued the section 366.26 hearing to September 23, 2011. The department was ordered to prepare reports for the section 388 petition and the section 366.26 hearing.

## H.  September 23, 2011 Reports and Hearing

The September 23, 2011 supplemental report indicated Du. M. continued to reside with his foster parents. The department noted it took the mother more than a year to comply with the May 8, 2009 order requiring her to attend counseling. The mother had attended only one psychotherapy session on July 14, 2011. The mother just started addressing her mental health issues with a case manager four times since June 10, 2011. The mother was still transient. She did not complete the parenting classes and was not drug testing.

The mother had only visited Du. M. three times: December 20, 2010, June 25, 2011 and September 2, 2011. The mother continued to be inappropriate during the visits. She told the children they would be moving back home with her and promised them video games. The mother also told the children not to listen to their caregivers. The mother made false promises to Du. M. during her sporadic calls and had been disruptive while talking to his foster parents. During the visits, the mother hugged Du. M. and his

11

younger brother and cried hysterically, which made the children cry with her. After the visits, the children showed signs of stress, becoming more irritable and easily upset. The children also began hoarding food after the visits.

The department recommended the alternative plan for Du. M. was legal guardianship with his foster parents. The child had been with the foster parents for over a year. The foster parents had provided Du. M. with a loving home and met his physical and mental health needs.

The September 23, 2011 status review report also recommended Du. M.'s foster parents become his legal guardians. Du. M. was doing well at school and enjoyed attending his youth group every week. His behavior at home had improved but he still had behavioral and bedwetting problems. Du. M. was hoarding food which the therapist indicated was a manifestation of his fear of going without it. He continued to receive therapy and worked with his Wraparound team.

The maternal grandmother stated the mother did not live with her. This statement contradicted the mother's statement that she resided with the maternal grandmother. The maternal grandmother reported the mother had always been wild. When the mother was 12 years old, she would not listen to the maternal grandmother and refused to attend school. The mother was placed in foster care and returned to the maternal grandmother when she was 14 years old. The mother did not graduate from high school and continued to be wild. The maternal grandmother stated the mother was a good mother and had not done anything wrong. She believed the mother might go crazy if the children were not returned to her.

The attached September 7, 2011 letter from Du. M.'s therapist reported the child was bedwetting, hoarding, and had problems with stealing and lying. The therapist was working with Du. M.'s foster parents "towards helping [the child] build more trusting relationships with them through the use of unconditional love, and consistency and predictability, along with flexible structure." The therapist reported: "[Mr. and Mrs. G.] continue to show commitment to helping [the child] overcome his problems and building

12

healthy family relationships.  They remain willing to collaborate with [the child's] various service providers."

At the September 23, 2011 hearing, the juvenile court continued the matter to December 6, 2011 for a contested section 388 hearing, with a section 366.26 hearing to follow.

## I.  December 6, 2011 Report and Hearing

The December 6, 2011 interim review report indicated Du. M. remained with his foster parents.  The foster parents were working with the child to control his hoarding, bedwetting, stealing and anger problems.  The mother had visited Du. M. only four times in over one year.  The mother stopped going to therapy at South Central Health and Rehabilitation.   She told the department social worker she stopped going there because the place was for drug addicts and had case managers, not counselors.  The mother reported she did not have a doctor but still had some medication left.

The department social worker confirmed the mother had just started counseling at People Who Care Youth Center.  The mother's counselor stated the mother was supposed to attend once a week but her attendance was inconsistent.  She had attended five individual counseling sessions.  Because of her sporadic attendance, the mother had been unable to make progress towards goals or any other issues.  The mother informed the counselor she was on medication but the counselor did not know who prescribed the mother medication.  The department continued to recommend legal guardianship for Du. M.

At the contested section 388 hearing on December 6, 2011, the mother testified she had completed 10 weeks of parenting classes.  In addition, she was attending weekly individual counseling.  But the mother explained her attendance was sporadic because she had transportation problems.  The mother had not refilled her prescription medication because she did not have medical insurance.  After testimony and oral argument, the

juvenile court denied the mother's section 388 request for further family reunifications services. The juvenile court continued the section 366.26 hearing to February 2, 2012.

### J. February 2, 2012 Report and Hearing

The February 2, 2012 interim review report stated Du. M. remained with his foster parents. The child continued to receive counseling to address his anger, bedwetting and stealing issues. His foster parents continued to be committed to helping him overcome his problems.

The department also reported on its efforts to help the mother with visitation. The department social worker dropped off the mother's bus pass at her home when the mother complained she could not get to the office. On December 19, 2011, the department social worker called the mother to schedule a visit between her and the children. The mother was notified all three children would be at the department's San Fernando Valley office two days later, on Wednesday. The mother responded she was unavailable every Wednesday. The department social worker then tried to schedule a visit between the mother and Du. M. and his younger brother for the next day. The mother stated she could not make the visit on one day's notice. Another visit between the mother and Du. M. and his younger brother was scheduled for January 30, 2012. Six days before the scheduled visit, the mother was notified the visit location would be 10 miles from her home. The mother stated the location was too far away for her to visit the children.

At the contested section 366.26 hearing, the juvenile court terminated parental rights over the youngest child, D.T.M. The matter was continued for appointment of a legal guardian for Du. M. at the request of the department. Later, the mother appealed from the order terminating her parental rights over the youngest child. The case was returned to the juvenile court on July 25, 2012 after this court reversed and remanded the matter for the limited purpose of complying with the Indian Child Welfare Act (ICWA). The juvenile court reinstated parental rights and made orders to comply with ICWA's notice requirements.

### K. August 2, 2012 Reports and Hearing

The August 2, 2012 CASA report stated Du. M. continued to enjoy living with his foster family. He did not know when he last saw the mother. He enjoyed visits with his siblings but did not "want to see [his] real mom anymore." His foster parents reported he had a visit with the mother in May and was very upset after the visit.

The August 2, 2012 status review report indicated Du. M. was now 10 years old. He still wore diapers at night for his enuresis. His foster parents reported Du. M. lied, lost his homework in school, and tore and scratched the car seat. They stated Du. M. stole items from stores during shopping trips. In addition, the child would spread feces on the wall after he had a bowel movement and still needed help with self-cleaning. His foster mother stated, "I feel [the child] is very disturbed emotionally, however in school he is great[.]" Du. M. informed his therapist he did not like seeing his mother because she always cried during the visits. The department reported the one visit between the mother and Du. M. had gone well. Du. M. was assigned a secondary case worker to help search for family or friends that could form a lifelong connection with the child.

At the August 2, 2012 hearing, the matter was continued to September 19, 2012 pending the ICWA findings. On August 17, 2012, the juvenile court vacated the September 19, 2012 hearing date and continued the hearing to September 28, 2012.

### L. September 28, 2012 and October 5, 2012 Reports and Hearing

The September 28, 2012 CASA report stated Du. M. loved living with his foster family and did not want to leave. He enjoyed fifth grade and his afterschool program. The child did not want to see the mother but enjoyed the sibling visits. CASA recommended legal guardianship for Du. M. with his foster parents and visitations with the mother be in a therapeutic setting.

The department's September 28, 2012 interim review report indicated Du. M.'s foster mother had agreed to be his legal guardian once the D-rate funding was in place.

Du. M. reported he liked living with his foster family and appeared very attached to them. His therapist reported she and the foster mother were working with Du. M. on his stealing problem.

At the September 28, 2012 hearing, the trial court continued the section 366.26 hearing because the department had not received a response from an Indian tribe and the Bureau of Indian Affairs concerning the ICWA notice.

On October 5, 2012, the department reported Du. M. was approved for D-rate funding in its last minute information for the court filing. The child's foster mother indicated she was now willing to sign paperwork to be his legal guardian. That same day, the juvenile court ordered legal guardianship as the appropriate permanent plan for Du. M.

### M. Mother's Section 388 Petition and Hearing

On October 9, 2012, the mother filed another section 388 petition. The mother requested reinstatement of reunification services and increased visitation with her children. The mother stated she was receiving mental health services and taking medication for depression and bipolar disorder. The mother attached the following: a letter from Hillsides indicating the mother now visited Du. M.'s younger sister once a week; completion certificates for a three-hour domestic violence class and 20 hours of parenting training; the mother's school transcript; and print-outs of the mother's three counseling appointments at Kendren Avalon Mental Health Center. The juvenile court granted a hearing on the mother's section 388 petition.

On October 23, 2012, the department responded to the mother's section 388 petition in advance of the November 26, 2012 hearing. The mother informed the department she did not have a residence but was staying at various friends' homes. The mother was participating in mental health and family focused wellness services through the Kendren Avalon Mental Health Center. She was seeing a therapist twice a month. In addition, the mother saw a psychiatrist on a regular basis and was taking medication for

schizophrenia, depression and bipolar disorder. The mother indicated she was looking for additional counseling services in the Los Angeles area. She also was working with a parent partner, Ms. Denisha Evans, at Hillsides, where her daughter, Da. M., had been placed by the department.

Ms. Evans stated she saw the mother once a week and spoke to her daily. She was looking for specialized housing for the mother through the Department of Mental Health. Ms. Evans stated the mother currently received only $200 per month and general relief services. She reported the mother was trying to consistently participate in psychological and psychiatric services and was taking medication, but the mother continued to have "her ups and downs." Ms. Evan thought unmonitored visits with Da. M. would be appropriate but recommended the mother have additional monitored visits with Du. M. before visitation was liberalized. Ms. Evans also indicated the mother should participate in random drug testing before any liberalization of the visits.

The department reported the mother now was visiting Du. M. and Da. M. regularly. The mother visited Du. M. once a month. The department social worker was working with the mother and Du. M.'s foster parents to resolve their conflicts. Du. M. had some resentments about his current living situation and the visits with the mother had not gone as smoothly compared with the mother's visits with his sister, Da. M. The department social worker believed the mother should have monitored visits with Du. M. and should be drug testing before liberalization of her visits with the child. The social worker was not opposed to the mother receiving more reunification services because Du. M. continued to have problems at his current placement and Da. M. was very closely bonded with the mother. However, the department noted the mother did not have stable housing and she had just started to comply with court orders made almost two-and-a-half years before. The department recommended denial of the mother's section 388 petition. But if the mother's family reunification services were reinstated, the department believed the mother should continue to take her medication, participate in psychiatric and psychological services and undergo random drug testing.

17

In the November 26, 2012 information for the court officer, the department reported Du. M.'s foster mother would receive D-rate funding once she was named as the child's legal guardian. The department also stated Du. M. and the mother had a visit at a local park on November 6, 2012 that went well. The child and the mother looked forward to their next monthly scheduled visit.

On November 26, 2012, the juvenile court received into evidence the department's November 26, 2012 report and heard argument on the mother's section 388 petition. The children's counsel requested the court deny the mother's section 388 petition as to Du. M. but grant the petition as to Da. M. The department's counsel argued it was premature to grant the mother's section 388 petition because she was not yet drug testing. After argument, the juvenile court denied the section 388 request as to Du. M. The court explained the child had been with his placement for some time and his caregiver was willing be his legal guardian. The juvenile court granted the mother's petition as to Da. M., giving the mother six months of reunification services.

The juvenile court found legal guardianship was in Du. M.'s best interest and appointed Veronica G. to be his legal guardian. The mother was granted one hour monthly monitored visits with Du. M., to be arranged with the legal guardian. The mother filed her notice of appeal that same day.

# III. DISCUSSION

## A. Section 388 Petition

Section 388, subdivision (a)(1) provides in part: "Any parent or other person having an interest in a child who is a dependent of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of the court previously made or to terminate the jurisdiction of the court. The petition shall be verified and . . . shall state the petitioner's relationship to or interest in the child . . . and shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction." The moving party has the burden of showing "by a preponderance of the evidence that there is new evidence or that there are changed circumstances that make a change of placement in the best interest of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) The changed circumstances must be viewed in the context of the dependency proceedings as a whole. (*In re Marilyn H., supra,* 5 Cal.4th at p. 307; *In re D.R.* (2011) 193 Cal.App.4th 1494, 1512.) "After termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interest of the child.' [Citation.]" (*In re Stephanie M., supra,* 7 Cal.4th at p. 317; *In re Marilyn H., supra,* 5 Cal.4th at pp. 302, 309; *In re D.R., supra,* 193 Cal.App.4th at p. 1512.)

We review a denial of a section 388 petition for abuse of discretion. (*In re Stephanie M., supra,* 7 Cal.4th at pp. 316, 318; *In re B.C.* (2011) 192 Cal.App.4th 129, 141; *In re Angel B.* (2002) 97 Cal.App.4th 454, 460.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority

19

to substitute its decision for that of the trial court.' [Citations.]" (*In re Stephanie M., supra,* 7 Cal.4th at p. 318, quoting *Walker v. Superior Court* (1991) 53 Cal.3d 257, 272.)

We find the juvenile court did not abuse its discretion in denying the mother's section 388 petition. The mother failed to show that it was in Du. M.'s best interest to modify the order terminating her reunification services and increasing her visitations. Du. M. and his siblings were first removed from the mother in April 2009 because of her medical neglect of Du. M. The mother regained custody on September 10, 2009 but the children were removed again on March 18, 2010 because of the mother's neglect of Du. M.'s medical needs. Since then, Du. M. has remained out of the mother's care.

Furthermore, the mother only recently complied with court orders made in September 2009 and May 2010. On September 10, 2009, the juvenile court ordered the mother to participate in individual counseling to address mental and emotional health issues and to attend parenting classes. In addition, the mother was ordered to cooperate with family preservation and the children's school, and take the children to all medical appointments. On May 11, 2010, the juvenile court ordered the mother to do weekly random alcohol testing. The juvenile court terminated family reunification services for the mother on February 7, 2011 because of the mother's minimal compliance. It took the mother more than three years to address her mental health issues by seeing a therapist and psychiatrist at Kedren Avalon Mental Health Services and working with a parent partner at Hillsides. Although the mother was trying to consistently participate in psychological and psychiatric services and was taking medication, she continued to have "her ups and downs." Moreover, before receiving services from Kedren Avalon Mental Health Services, the mother had started many different counseling services only to later abandon them.

In addition, the mother failed to visit Du. M. for long periods of time and called him infrequently. The September 23, 2011 supplemental report indicated the mother had visited Du. M. only three times in over a year. By December 2011, the mother had visited Du. M. only once since September 2011. The mother did not begin regular monthly visits with Du. M. until recently. Although Du. M.'s last visit with the mother

20

went well, the child also has told CASA he did not want to see the mother anymore.  In addition, after visits with the mother, the child's behavior would worsen and he sometimes became very upset.  Furthermore, the mother was inappropriate during the visits and calls.  She told the children not to listen to the caregivers and promised they would be moving back home with her.

Moreover, the mother did not seem aware of her children's medical and mental health needs.  In the December 6, 2011 interim report, the department reported the mother questioned the need for her children to be on medication.  She also failed to attend any of Du. M.'s medical or school appointments.  Furthermore, CASA was appointed to be Du. M.'s education rights holder because the mother failed to request educational and developmental services for him.

Although the department social worker indicated Du. M. had some resentment about living with the legal guardian, Mrs. G., and her family, he also stated he liked living with them.  The child had been placed with Mr. and Mrs. G. since April 2010 and called them "mom and dad."  The department reported Du. M. appeared attached to Mr. and Mrs. G and their family.  Also, Mr. and Mrs. G. were committed to helping Du. M. control his hoarding, bedwetting, stealing, and anger problems.  It was in Du. M.'s best interest to provide him with stability and permanence by denying the mother's request for reinstatement of reunification services and appointing Mrs. G  as his legal guardian.

## IV.  DISPOSITION

We affirm the juvenile court's November 26, 2012 order denying the mother's section 388 petition.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


O'NEILL, J.[*]



We concur:



TURNER, P. J.



KRIEGLER, J.

---

[*] Judge of the Ventura County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.