Filed 5/1/14  In re C.R. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re C.R. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPTARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>L.G.,<br><br>    Defendant and Appellant. | F068113<br><br>(Super. Ct. No. 07CEJ300083)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Mary Dolas, Commissioner.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Kevin Briggs, County Counsel, William G. Smith, Deputy County Counsel for Plaintiff and Respondent.

----

[*]     Before Levy, Acting P.J., Kane, J. and Franson, J.

The juvenile court appointed a relative as legal guardian and terminated dependency jurisdiction over six-year-old C.R., five-year-old A.R., and three-year-old V.R. (the children). Their mother, L.G., challenges the parental visitation order. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

*Section 300 Petition*

The children came to the attention of the Fresno County Department of Social Services (the Department) in October of 2011, when mother was seen spitting at, screaming at, throwing things at, and hitting her children. A Welfare and Institutions Code section 300[1] petition alleged, pursuant to subdivision (a), that mother used excessive physical discipline on the children and their father, F.R., failed to protect the children from mother.[2] The petition further alleged, pursuant to section 300 subdivision (b), that mother had a substance abuse problem that caused her to fail at reunification with another child, G.R. It also alleged, pursuant to subdivision (j), that the children were at risk of harm due to the earlier case involving G.R.

*Detention*

The November 2011 report prepared in anticipation of detention stated that the children were in foster care. According to the report, mother had had a number of child welfare referrals over the years involving three other children, most of which were found to be inconclusive or which were evaluated out. But mother had been involved in a case in 2007 in which she lost custody of G.R. due to her methamphetamine use. G.R. was eventually adopted.

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     Father is not a party to this appeal.

When questioned by the social worker about the current incident which brought her to the attention of the Department, mother denied anything had happened. Mother suggested the social worker check the children for bruises, which mother claimed were nonexistent. The social worker did not want to leave the children with father, as he did not agree that mother had been abusive to them.

On November 2, 2011, the juvenile court made a prima facie finding on the petition and ordered the children detained in foster care.

*Jurisdiction*

The December 2011 report prepared in anticipation of jurisdiction stated that mother and father were provided visitation with the children. The visits went well for the most part, although mother seemed to have difficulty with the children at times. The Department questioned mother's parenting ability.

The Department was in the process of assessing relatives for placement of the children. Mother denied drug use, and also denied testing positive for methamphetamine at the time G.R. was born, stating those were merely accusations.

The Department recommended that the children not be returned to mother and father. Mother was seen acting inappropriately during visits, and the Department thought the children would be at risk if returned to father, who lived with mother.

At the December 14, 2011 hearing, counsel for mother and father both requested a contested hearing, which was set for February 8, 2012, following a settlement conference.

*Amended Petition*

At the time scheduled for the contested jurisdiction hearing, the Department filed an amended section 300 petition, pursuant to subdivision (b), that the children were at risk of harm due to excessive physical punishment by mother and on father's failure to protect the children from mother. The amended petition did not contain any allegations under subdivisions (a) or (j). Mother and father executed a waiver of rights and submitted on the amended petition based on the social worker's report and other

3.

information.  The juvenile court found the petition to be true.  The matter was set for disposition March 14, 2012.

*Disposition*

In April of 2012, following a continuance, the Department recommended that mother and father be denied reunification services pursuant to section 361.5, subdivision (b)(10) and (11).**3**  The children were placed with their maternal aunt, who indicated a willingness to care for the children long-term.  The children were reported to be adapting well to this placement.  They were also enjoying visits with their parents.

Mother stated her desire to reunify with the children.  Although she said she was willing to participate in services, she did not think she needed them.  She had enrolled in a parenting class.  But the Department was concerned that mother had not properly dealt with the issues that caused her to earlier lose custody of G.R..  Mother appeared to have sporadic and manic moods but denied that she needed mental health treatment.

On May 14, 2012, following a contested hearing, the juvenile court declared the children dependents of the court and ordered them removed from mother and father.  Both mother and father were denied reunification services.  A section 366.26 termination hearing was set for September 10, 2012.

*Further Developments*

On August 13, 2012, at the direction of this court, the juvenile court vacated its prior order denying the parents services.  It then ordered the Department to submit a new disposition report; the department had ultimately been unable to establish that the cause of the removal and adoption of G.R., namely substance abuse, still existed with regard to the children involved in the present case.

---

**3**     Section 361.5, subdivision (b) provides that reunification services need not be provided a parent if: (10) the parent has failed to reunify with a sibling of the children currently at issue; or (11) the parental rights over a sibling of the children currently at issue have been permanently severed.

4.

In its new disposition report, the Department recommended that mother and father receive reunification services. Mother stated she was willing to participate in reunification services. The children remained with their maternal aunt. Mother and father participated in visitation with the children, but the maternal aunt asked to be relieved of the responsibility of supervising the visits because she had difficulty communicating with father.

On September 24, 2012, the juvenile court ordered the Department to provide reunification services to mother and father.

*Six- and 12-Month Status Review*

In it status review report in March of 2013, prepared in anticipation of the review hearing, the Department recommended that mother continue to receive reunification services, but that father's services be terminated. Mother was participating in services and reported to be making moderate progress. Father was reported to be resistant to the service plan and had made only minimal progress.

Both mother and father participated in visitation, although mother was reported to be less actively involved during the visits than father. The Department was considering separate visits for each parent to ensure mother was able to more fully engage with the children.

In an addendum report, the Department recommended services be terminated for both mother and father. Mother had been unable to demonstrate to the Department's satisfaction that she could care for the children. She had refused to participate in a child abuse batterer's treatment program. Father made minimal progress on his case plan.

*Section 366.22 18-Month/Permanency Review*

In its review report of May of 2013, the Department again recommended termination of reunification services for both mother and father. Although mother continued to participate in parenting classes, she had not demonstrated changed behavior, making only minimal progress in her ability to care for her children or in recognizing her

need to protect her children.  The Department believed mother needed some additional, as yet undetermined, treatment in order to help her make progress toward reunification. Therefore, the Department did not believe the children should be returned to mother. Father's work schedule interfered with his services and visitation.

On May 24, 2013, the juvenile court terminated reunification services for both mother and father and set the matter for a permanency hearing.

*Permanent Plan*

In September of 2013, in its report in anticipation of the permanency hearing, the Department recommended guardianship without dependency for the children, who remained in placement with the maternal aunt.  The children were healthy and developmentally on target, and there was no concern that they might need mental health treatment.

Mother continued to have consistent visitation with her children until the end of July 2013, when the case was transferred to the permanency assessment unit.  According to the Department, the overall nature of mother's visitation remained constant throughout the reporting period - she was consistently "disengaged" during visits.  The aunt permitted mother and father to call the children during the week, in addition to their one hour of in-person visitation each week.

The children continued to do well in placement with their aunt, who was able to provide them with an appropriate home on a long-term basis, but was unable or unwilling to adopt them "because of exceptional circumstances that do not include an unwillingness to accept legal or financial responsibility for the children …."  The Department opined that removal of the children from the maternal aunt's home "would be detrimental to the emotional well-being of the children …."

On September 30, 2013, after a contested hearing, the juvenile court found there was "clear and convincing evidence and a compelling reason that termination of parental rights would be detrimental to these minors since the parents have maintained regular

6.

visits and contact with the children, and the children would benefit from continuing that relationship." The juvenile court also found that removing the children from the maternal aunt, who was willing to provide them with a stable and permanent environment, would be detrimental to their emotional well-being. As such, it found legal guardianship was the appropriate plan for the children and that continued dependency was no longer necessary. The juvenile court then terminated jurisdiction over the minors and issued letters of guardianship in favor of the maternal aunt. Mother was given a minimum of one visit per month with the children.

## DISCUSSION

On appeal, mother contends only that the visitation order made at the time of the permanency hearing is unnecessarily restrictive so as to amount to an abuse of discretion on the part of the juvenile court. We disagree.

In its report in anticipation of the permanency hearing, the Department recommended continued visitation between mother and the children and that visitation "be reasonable, supervised by the Legal Guardian, minimum once a month for one hour, upon contacting the Legal Guardian, visits to take place at the Legal Guardian's home."

At the hearing prior to the order, counsel for mother asked that the juvenile court "consider giving [mother] her visitation once a week." In response to the request, counsel for the Department explained that its recommendation for once a month visits was due to the fact that mother had been very inconsistent in her participation in visitation, causing a problem for both the children and the guardian.

The juvenile court then explained that the recommendation, as it now stood, was for discretion for visits, supervised by the guardian, a minimum of once per month, "which means, essentially, if mother is requesting more and shows up, it would allow additional visits per month depending on the minors' availability." Counsel for the children agreed that it was best to keep discretion with the guardian. That way, if mother became more consistent and the guardian thought it appropriate, visits could increase.

7.

The juvenile court then found the Department's recommendation appropriate as it guaranteed a minimum of at least one visit per month, but gave mother "the ability to contact and make arrangements for additional visits. It just has to be convenient for the children, does not interrupt any of their schooling and upon mother's showing she's going to show up." The juvenile court ordered that visits between mother and the children "be reasonable and supervised by the legal guardian. The location of the visits will be at the legal guardian's home, which will be a minimum of one visit per month upon the mother contacting the legal guardian to arrange or schedule those visits." In the order itself, the juvenile court struck language specifically limiting mother to one hour for each of her visits.

We review a visitation order made in a dependency proceeding for abuse of discretion and will not disturb the order unless an abuse of discretion is clearly shown. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" (*Ibid.*, quoting *Walker v. Superior Court* (1991) 53 Cal.3d 257, 272.)

When the juvenile court selects guardianship as the permanent plan as it did here, it "shall also make an order for visitation with the parents … unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (§ 366.26, subd. (c)(4)(C).) The juvenile court has sole power to determine whether visitation will occur. (*In re M.R.* (2005) 132 Cal.App.4th 269, 274; *In re S.H.* (2003) 111 Cal.App.4th 310, 317; *In re Julie M.* (1999) 69 Cal.App.4th 41, 48-49.)

Once visitation is ordered, the juvenile court may delegate discretion to manage the details of the visits. (*In re Chantal S.* (1996) 13 Cal.4th 196, 213.) For example, a guardian may manage the details such as time, place and manner of visits, which does not

affect a parent's defined right to see his or her child.  (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1123; *In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374.)  But the visitation order must give some indication as to how often visitation should occur.  (See *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008-1009 [an order giving a parent "reasonable" visits is sufficient]; *In re Moriah T., supra,* at pp. 1375-1376 [court specified that visitation be "'as frequent as possible, consistent with the well-being of the minor'" (italics omitted)].)

Mother acknowledges that the visitation order in question "complied with the general requirement that the parents of children in guardianships be provided with visitation."  But, mother argues, because the juvenile court found that termination of parental rights would be detrimental to the children since she and father maintained regular visits and contact, "merely providing some visitation" was not enough.  Mother argues that the visitation order constitutes an abuse of discretion on the part of the juvenile court because it "does not realistically address the need to maintain and build the beneficial relationship the juvenile court recognized between mother and her children."  As part of this argument, mother also contends that the juvenile court should not have given the guardian the discretion of determining how long each of mother's monthly visitation periods would be.

We find no merit to mother's argument.  The juvenile court had ample reason to limit mother's visits to once a month at this point.  As noted in the Department's permanency report, the children had a "very limited relationship" with mother, and when they did have visits, there was "no affection or engagement with one another."  The report, written in September of 2013, also stated that mother had not visited the children since the end of July of 2013.  At the permanency hearing, the Department explained that mother had been very inconsistent in her visitation participation, causing a problem for both the children and the guardian.  Therefore, the visitation order, as written, is appropriate.  By crossing out the phrase "one hour" in its order, the juvenile court was

allowing for visits longer than the hour time limit first recommended by the Department. And, as emphasized by the juvenile court, if mother wished to have additional visits, she had that ability by showing up for the scheduled visits and becoming more consistent and then requesting additional visits.

We find no improper delegation or abuse of discretion on the part of the juvenile court.

## DISPOSITION

The order is affirmed.

10.