Filed 11/9/15  In re D.K. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re D.K. et al., Persons Coming Under the Juvenile Court Law. | B265481 |
| PATRICIA K., <br><br> Petitioner, <br><br> v. <br><br> SUPERIOR COURT FOR THE COUNTY OF LOS ANGELES <br><br> Respondent, <br><br> LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Real Party in Interest. | (Los Angeles County <br> Super. Ct. No. DK02386) |

ORIGINAL PROCEEDING in mandate, Philip L. Soto, Judge.  Petition denied.

Law Office of Rachel Ewing, Rebecca Harkness and Thomas Pichotta under appointment by the Court of Appeal, for Petitioner.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Real Party in Interest.

Patricia K., the mother of three dependent minors, seeks a writ of mandate to overturn a court order terminating her reunification services and setting a permanency planning hearing. The petition is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The dependent minors in this case are mother's sons, D.K. (born in 2003) and J.K. (born in 2004), and daughter, N.K. (born in 2008). On November 17, 2013, mother was arrested for assaulting her companion, Anthony J., in the face with an ink pen.[1] Mother had no one to care for the children during her incarceration.

A dependency petition was filed on behalf of the children by the Los Angeles County Department of Children and Family Services (Department). (Welf. & Inst. Code, § 300.)[2] Counts a-1 and b-1 alleged that mother and Anthony had engaged in violent altercations in front of the children; that mother was arrested for assaulting Anthony in the face with a pen; and that the children were endangered by mother's violent conduct with Anthony. Counts a-2, b-2, and j-1 (count j-1 applied only to N.K.) alleged that Anthony had physically abused D.K. and J.K., and that mother had failed to protect them, thus placing all three children at risk of harm.

According to the Department's report for the detention hearing, the family was "homeless and living out of the mother's vehicle." Mother had lost her job and apartment several months before her arrest. Mother was granted monitored visitation with the children, who were placed in foster care.

According to the Department's report for the jurisdiction and disposition hearing, the children were "healthy," "articulate," "well spoken," and expressed "love for their mother." Mother was visiting with the children, participating in anger management class, and trying to comply with court orders. The children missed their mother and wanted to live with her. The foster mother reported that the boys had behavioral issues, which she

---

[1] Anthony is not a party to this appeal.

[2] All further statutory references are to the Welfare and Institutions Code.

2

believed were related to the domestic violence and physical abuse they had experienced. Based on her observations, the foster mother believed that the children "were exposed to much more than one incident of domestic violence, and that the physical abuse they suffered occurred over a period of time."

At the January 2014 jurisdictional hearing, the court sustained the petition, and found the minors to be dependent children under section 300, subdivisions (a), (b), and, as to N.K. only, (j). The court found by clear and convincing evidence that the children were at risk of emotional and physical harm, and that there were no reasonable means of protecting them short of removing them from mother's physical custody. (§ 361, subd. (c).) Mother was granted family reunification services, and was ordered to complete parenting and domestic violence programs, and undergo individual counseling to address case issues, including child safety, domestic violence, and anger management. Mother continued to have monitored visitation.

The following month, the children were moved to new foster homes (the boys to one home and N.K. to another) because of the boys' behavioral issues. The boys were given special services, and N.K. was placed on a waiting list for mental health services. Mother participated in the boys' therapies.

At the six-month hearing, the Department reported that mother had disclosed to a social worker and service provider that she was experiencing psychiatric difficulties, including depression and suicidal ideation, and had attempted suicide on three undisclosed dates. Mother had acted upon the advice of the service provider by placing suicide hotline numbers in her phone, entering a contract not to harm herself, developing a safety plan, and scheduling a mental health services appointment. The Department recommended that the children's visits continue to be monitored until mother was given a psychiatric evaluation, her mental health was stabilized, and she was receiving mental health services. Mother was ordered by the court to undergo a psychiatric evaluation, complete the domestic violence and parenting program at Jewish Family and Children's Services (JFCS), and, upon completion of that program, participate in a domestic violence support group.

3

At the 12-month review hearing, the Department reported that mother had been seen for mental health services in July 2014, and had attended counseling sessions in November and December of 2014. Mother did not complete the parenting and domestic violence program at JCFS, but was enrolled in a domestic violence program at LLIFE Services. When LLIFE Services learned of mother's myriad mental health issues (including depression, danger to self, aggression, panic attacks, emotional abuse, sexual abuse, physical abuse, grief, violence, fear), it referred her to a mental health clinic.

During this period, mother was staying at a transitional living facility. She had "increased" her visits with the children, who were having "routine sibling visits." The Department noted there were some issues regarding mother's "punctuality and . . . visits at an unapproved location," but the visits were going well. The court found that returning the children would place them at considerable risk of harm, that reasonable services were being provided, and that mother was in partial compliance with the case plan.

At the 18-month review hearing, the Department reported that mother had attended five therapy sessions with Leslie Lamar, a licensed clinical social worker, between December 2014 and March 2015. Ms. Lamar described mother as "pleasant, cooperative and helpful." Ms. Lamar stated that for unknown reasons, mother had not scheduled any therapy sessions after March 2015.

Mother had an appointment with Dr. McCarthy, a psychiatrist, in February 2015. The Department reported that mother had not provided "proof that she has received services and is continuing to receive services." The Department continued to require that her visits be monitored. The Department was concerned about mother's "emotional well-being as mother has been suicidal in the past. It appears mother attempted to address her mental health needs but after a few sessions stopped receiving services. At times, mother communicates a desire to be in compliance with her court orders to have the children returned to her care but her actions show otherwise. Without mother successfully addressing her mental health needs the Department has been unable to liberalize her visits to unmonitored. Also, since mother's involvement with the Department she has been unable to maintain stable employment and housing."

4

After 18 months of services, mother had only partially complied with the case plan. She was not participating in individual counseling, addressing her mental health issues, or attending a parenting program and domestic violence support group. The Department recommended the termination of reunification services.

Mother sought to have the children returned to her custody. At her request, the court scheduled an evidentiary hearing and ordered the Department to assess any home where mother proposed to live with the children.

Due to delays in conducting the home assessment, the court continued the evidentiary hearing. On the date of the home assessment, the social worker went to the address provided by mother, but was unable to conduct the assessment because no one was there. The next day, mother told the social worker that she was moving to a different location, the home of her friend Deidra. Seeking to obtain Deidra's address, the social worker left messages for mother and Deidra, but did not hear back. Because the social worker did not know Deidra's address, her home was not assessed before the hearing.

At the evidentiary hearing, mother testified that she and her children were going to live with her aunt, L.S. Mother and her aunt would sleep in the living room, and the children would sleep in the bedroom. Mother testified that she did not need any therapy. She provided a certificate from LLIFE Services for the completion of a 12-week domestic violence program.

The court examined mother regarding her failure to have her aunt's apartment assessed before the hearing. Mother explained that she did not tell the social worker about her aunt's apartment because it has only one bedroom and she was trying to find a larger home.

Mother's attorney suggested that the children be returned to mother on the condition that they would live at her aunt's apartment or some other location approved by the Department.

The children's attorney objected to returning the children to mother's custody, and requested that her reunification services be terminated. Counsel for the minors argued that even without the uncertainty regarding mother's living arrangements, it was not safe

5

to return the children because there was insufficient evidence that mother had addressed the serious issues in this case.

The court stated that the issues in this case could not be "completely resolved" without "continuing therapy," but mother has "indicated that she's not inclined to do any more therapy. Her opinion is that she's done with therapy. And . . . [w]e made specific orders for the mother to cooperate with the Department and the Department to cooperate with her. [¶] And reasonable efforts have been made by the Department to examine whatever home the mother intended to live in with the children. That's never been done. So the court does not have the satisfactory investigation of whatever home the children would be living in with the mother . . . ." The court also noted: "We've got children of opposite sex. And the law requires that they have their own rooms, separate rooms. The boys could be in one room, but not together with the girl." The court expressed doubts as to mother's credibility, mental health, and fitness to care for her children: "It is not credible for her to come in and say, 'I've resolved all of the issues with regard to three unsuccessful suicide attempts. I don't need to have any more therapy. I don't need any more treatment.'"

In response to mother's objection that the case plan did not require her to address mental health issues, the court replied that because the mental health issues came to light during the reunification period, they must be addressed. The court found that mother's mental health problems and refusal to participate in further counseling were legitimate issues in this case.

The court also found that because mother did not tell the social worker about her aunt's apartment until the day of the hearing, neither the aunt nor the apartment could be evaluated before the hearing, and the court had no basis to determine whether the children would be safe in the aunt's home. The court found that mother had not been honest about the proposed living arrangements. "She's never been honest with us about that. And this is entirely new information for all of the litigants except for the mother and her lawyer."

6

The court found by a preponderance of the evidence that returning the children to mother's custody would place them at substantial risk of harm. Based on mother's failure to comply with the case plan and address her mental health issues, the court terminated her reunification services and ordered the Department to provide the children with permanent placement services.

Mother filed a timely notice of intent to petition for writ of mandate. (Cal. Rules of Court, rule 8.450 (e).) After the petition was filed, we issued an order to show cause, established a briefing schedule, and set the matter for oral argument. (Cal. Rules of Court, rule 8.452(d), (g).)

## DISCUSSION

Under section 366.22, subdivision (a), the juvenile court is required to return the children to the parent's physical custody unless the court finds, by a preponderance of the evidence, that returning the children "would create a substantial risk of detriment to the safety, protection, or physical or emotional well being of the" children. In making this determination, the parent's compliance with the case plan is a relevant consideration. The appellate court reviews the trial court's decision for an abuse of discretion. (*Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 705.)

Mother contends that the Department did not demonstrate that returning the children would create a substantial risk of harm. She argues that the circumstances that led to the filing of the petition—the domestic violence incidents between mother and Anthony, and the risk of physical abuse by Anthony—no longer exist because she immediately severed all ties with Anthony. She asserts there is no evidence that she would engage in another domestic violence relationship, or that returning the children would place them at substantial risk of harm of physical abuse.

We agree with mother's contention that there is no evidence that Anthony remained in contact with mother or the children after the incident that led to the filing of the petition. Nor is there is evidence that mother was abusive or inappropriate with the children during visitation.

7

The difficulty mother faces, however, is that there is no evidence that she is prepared to resume caring for her children. Even putting aside the domestic violence issues, the unresolved mental health issues are of a sufficiently serious nature to support a finding that, unless mother actively engages in the mental health services offered to her, returning the children would create a substantial risk of harm.

Even though the court did not order mother to address mental health issues, the court did order her to cooperate with the Department, and to undergo individual counseling to address case issues. By the six-month review hearing, it was obvious that mother was experiencing severe mental health issues, including depression and suicidal ideation. The fact that mother had three prior suicide attempts raised a red flag. Under the circumstances, mother's reliance on the absence of a court order to undergo mental health treatment is unavailing. Even without a formal court order, the Department would have been remiss to liberalize her visits without receiving evidence that her mental health had stabilized.

Mother was offered mental health services, but for reasons not explained in the record, she did not fully avail herself of those services. As a result of mother's failure or inability to utilize the array of services offered her, the Department was incapable of liberalizing her visits beyond monitored visitation, even after 18 months of reunification services. In order for mother to have demonstrated that the children could be safely returned to her custody, she needed to progress beyond monitored visitation. But because of her untreated mental health issues, she was incapable of progressing to unmonitored or overnight visits. Because mother's lack of progress was caused by her refusal or inability to accept the services offered to her, the Department was correct to recommend that reunification services be terminated.

At oral argument, mother's attorney argued it was unfair for the trial court to rely on unresolved mental health issues that were not fully explored nor incorporated into the case plan, even though they had been raised in the Department's reports for the 6-, 12-, and 18-month hearings. The unfairness argument is not compelling, given the repeated attempts by the Department and LLife Services to provide mental health services for

8

issues that were raised by mother.  We note that mother did not complete the court-ordered parenting program, individual counseling, or home evaluation requirements, and she had not progressed to unmonitored or overnight visitation, even after receiving 18 months of services.  Aside from the court's concerns regarding unresolved mental health issues and lack of separate bedrooms for the children, the record contains sufficient grounds for termination of reunification services.  Even after being granted additional time, mother did not cooperate with the Department to obtain the required home study, and because she did not progress beyond monitored visitation, the court had no factual basis to determine whether the children could safely be returned to her care.  On this record, any reliance on mother's mental health issues or lack of separate bedrooms, even if erroneous, was not prejudicial.

The juvenile court's determination that returning the children would place them at risk of harm is supported by substantial evidence having no relation to mental health issues or separate bedrooms for the children, and the court did not err in denying mother's request for a return of custody.  The record does not support the assertion that the court erroneously shifted the burden of proof to mother.  The determination whether to return the children "was committed to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established.  [Citations.]"  (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318.)  The issue is not whether another court would have reached the same determination, but "'whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'  (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272, quoting *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.)" (*Stephanie M*., 7 Cal.4th at pp. 318–319.)  On this record, we find no abuse of discretion in the order terminating reunification services and setting the matter for a permanency planning hearing.

9

## DISPOSITION

The petition is denied.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

MANELLA, J.

COLLINS, J.