Filed 12/8/22  Marriage of Macias and Cuevas CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of ANNETTE S. MACIAS AND ALBERT CUEVAS. | |
| ANNETTE S. MACIAS, Respondent, v. ALBERT CUEVAS, Appellant. | E078233 (Super.Ct.No. HED1500092) OPINION |

APPEAL from the Superior Court of Riverside County. Joan F. Burgess, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

Albert Cuevas, in pro. per., for Appellant.

No appearance for Respondent.

1

The trial judge entered a permanent protective order under the Domestic Violence Prevention Act (DVPA) enjoining Albert Cuevas from contact with his former wife, Annette Macias, and his now 13-year-old daughter. (Fam. Code, § 6200 et seq. (all unlabeled statutory citations refer to this code).)

Macias sought protection on the grounds that Cuevas was verbally and emotionally abusive, had threatened Macias and her parents, and (in an amendment) had sexually abused their daughter. Cuevas, for his part, contended he is convinced Macias's father had been sexually abusing his daughter for years, his daughter was suffering from depression and suicidal ideation as a result, and the anger directed at Macias was a justified response to these concerns. The trial judge ordered an investigation under section 3027, and the report said, among other things, the child denied father's allegations against her grandfather and Cuevas made and recanted similar allegations in 2010 when he and Macias were going through a divorce. The report concluded Cuevas's allegations were unfounded, the child would be safe in the custody of her mother, and she would not be safe in the custody of her father.

The trial judge held a hearing at which the child and her sister-in-law testified, but there's no transcript of these proceedings in the appellate record and Cuevas doesn't discuss their testimony in his brief. After the hearing, the trial judge imposed a permanent restraining order in favor of Macias and her daughter effective for three years and entered an order granting sole legal and physical custody to Macias.

Cuevas argues the trial court erred by (1) allowing his daughter to testify though she is a minor and subject to the suggestion of her mother and other relatives, (2) refusing to allow him to submit medical records which he says help show his daughter was the victim of sexual abuse, and (3) allowing Macias to introduce evidence of his own prior convictions. Macias has not filed a responsive brief.

We conclude Cuevas has not carried his burden as appellant of providing legal authorities and factual citations to establish he is entitled to reversal. Without this assistance it is impossible to determine whether the trial judge erred in making evidentiary rulings or issuing the restraining order.

We therefore affirm the judgement.

## I

## FACTS

Cuevas and Macias were previously married and have a daughter who is now 13 years old. After their separation, Macias and their daughter lived with Macias's parents and other family members. Cuevas had visitation rights, and regularly spent time with his daughter.

The factual record in this case is poorly developed. According to Cuevas's brief, on March 7, 2021, his daughter, then 12 years old, started exhibiting changes in her behavior that he found to be drastic. He says he asked Macias by phone what she thought was going on, and she reported the girl had said she wanted to kill herself two days earlier. According to Cuevas, when the two met later that day, Cuevas said, "we need to

3

get our daughter help!" He says she replied, "I'm working on it." This didn't satisfy Cuevas, and he says he then began an investigation into what was troubling his daughter.

Three days later, Macias filed for a domestic violence restraining order against Cuevas, seeking protection for herself, her daughter, and her parents. She reported, "Albert Cuevas did the following things to me: We have a designated spot that we do our child custody exchange. I get to the spot I am getting my daughter's things out of the car and Albert begins to yell at me what the hell is going on. My daughter is having emotional issues and I didn't talk to Albert about it because he gets hostile, and I didn't want to cause an incident." She said he yelled, "If something fucking happens to my daughter it is your fault and I am coming after you." She said she asked Cuevas not to yell in front of their daughter and objected to discussing such sensitive matters in public.

She said, "Albert continued to verbally attack me in front of my parents and child. I was extremely afraid and had to remain calm to try and de-escalate the situation. Albert continues to display erratic behavior [and] my daughter is afraid of her father. The verbal abuse is too much to handle for myself my family and daughter, we need to be protected from Albert." She also alleged concern that Cuevas was drinking and could endanger their daughter's life by drinking and driving. "Albert takes our daughter and begins driving erratic my daughter was in fear for her life. At this moment I felt as if I was going to lose my daughter to a car crash. This situation is beyond my control Albert is out of control his drinking is getting out of control." The trial court issued a temporary restraining order the same day.

Cuevas filed a response on March 29, 2021. He asked the judge to refuse to grant a permanent restraining order and to charge "them" for perjury and child molestation. His response included a statement accusing Macias's father of molesting his daughter. He said the girl had been acting unusually the weekend of March 6 and 7 and he had finally pressed her to tell him what was wrong. He said she resisted but she finally said, "I wish grandpa stopped touching me." He said this alleged revelation is what precipitated the encounter between Cuevas and Macias when he returned the girl to her mother. Cuevas then alleged medical records show suspicious maladies that his own "research" showed should raise questions about sexual abuse. He also alleged his sister's fiancé heard his daughter crying while talking on the phone with her mother, asking for advice on what to tell her father and complaining that she just wanted her grandfather to stop "doing the dirty thing to me."

On March 30, 2021, Commissioner Samra Furbush, sitting as judge pro tem by agreement of the parties, held a hearing on whether to issue a permanent protective order. With the agreement of the parties, she ordered an investigation and report under section 3027, subdivision (b) and continued the hearing.

After interviewing the child, Macias, Macias's parents, and Cuevas, the Child Services Division of Court and Specialized Investigations (division) concluded Cuevas's allegations against Macias and her family were unsubstantiated. The child denied experiencing sexual abuse. She told the social worker she was aware her father is concerned about her maternal grandfather but said it was because her father does not like

her grandfather. The division also reported father had previously accused Macias's father of sexually abusing the child in 2010, when she was two years old, at a time when Cuevas and Macias were going through their divorce. During the child welfare investigation which ensued, Cuevas was interviewed and admitted he did not truly suspect sexual abuse but wanted the mother to communicate more with him about the child and wanted to be granted overnight visits. The child welfare investigation concluded the 2010 allegations of sexual abuse were unfounded.

After several continuances, the division filed their report on April 26, 2021. The report concluded the child could safely be placed with her mother. "After a thorough investigation, the Department has determined the child . . . can be safely maintained in the care of her mother, Annette Macias. There were no safety threats observed or identified regarding the mother's ability to provide for [the child's] needs. In this matter, the mother brought forth her concerns regarding [the child's] care in the home of the father and requested Court intervention. Additionally, the mother has accessed mental health services to assist [the child] in managing her feelings and emotions after [she] previously expressed a desire to end her life."

The report also concluded the child could not safely be placed in the care of her father. "The father is adamant [the child] was sexually abused by her maternal grandfather; however, [the child] denied this ever happened. Despite the father's belief of the allegation, the father returned [the child] to her mother's care on March 7, 2021, without notifying any authority agency of the disclosure [the child] allegedly made to

6

him and with the firm belief the mother is not protective of [her]. [The child] is struggling in her mental health and she was able to attribute her challenges to her father's aggressive behavior toward her. It seems the father would benefit from a psychological evaluation to fully assess his mental health needs."

While the investigation was ongoing, mother amended her petition for a protective order to include the allegation by the child's sister-in-law that the child told her Cuevas had touched her privates through her clothes and that he doesn't feed her when they're at his home. The report contained no evidence to support those allegations. Her denial that she had experienced sexual abuse was general, and her complaints about her father had to do with his angry outbursts, lack of emotional support, and his threats to kill her mother's family.

On November 29, 2021, the trial judge, Commissioner Joan F. Burgess, sitting as judge pro tem by agreement of the parties, held a hearing on whether to issue a permanent restraining order. The minute order indicates the child and Irene Camilon testified, and the judge took judicial notice of Cuevas's prior convictions. Camilon is married to the child's older brother, lives in the same home, and helps care for her when Macias isn't home. The appellate record has no transcript of the proceedings, and Cuevas's brief tells us nothing about the contents of their testimony. We can infer it wasn't favorable to him because he alleges his daughter's testimony was coerced and the judge should have excluded it.

Cuevas also objects that the judge excluded medical records which he presents as showing his daughter was the victim of sexual abuse from a very young age. However, we are unable to discern the trial judge's ruling or its basis from the appellate record. We did allow Cuevas to submit the medical records on appeal, which show his daughter suffered, at various points over her childhood, a cough and loss of appetite, outbursts of anger, some sort of bumps on her inner thighs with a negative test for urinary tract infection, and ear infections.

The trial judge issued a permanent restraining order protecting Macias and her daughter effective for three years. The written order strikes out the names of Macias's parents. The judge also ordered that Macias have sole physical and legal custody of their daughter and denied Cuevas visitation rights.

Cuevas filed a timely notice of appeal.

## II

## DISCUSSION

Cuevas argues the trial judge improperly allowed his daughter to testify despite indications she was susceptible to coercion, improperly excluded medical evidence, and improperly allowed evidence of his own prior legal problems. We find no merit in these arguments.

Cuevas has not carried his burden of establishing he is entitled to reversal by providing pertinent factual citations and legal authorities. "A touchstone legal principle governing appeals is that 'the trial court's judgment is presumed to be correct, and the

8

appellant has the burden to prove otherwise by presenting legal authority on each point made and factual analysis."' (*Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 599.) "In other words, it is not this court's role to construct theories or arguments that would undermine the judgment and defeat the presumption of correctness. Rather, an appellant is required to present a cognizable legal argument in support of reversal of the judgment. 'When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary.'" (*Id.* at p. 600.) The same is true when an appellant fails to make an adequate factual record upon which to base a review of the challenged order or judgment. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) These rules apply equally to appellants who represent themselves (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638), and Cuevas has failed to meet them. Thus, Cuevas has forfeited the issues he appeals.

Most problematic for this appeal is the lack of a reporter's transcript which would allow us to review the trial judge's evidentiary rulings for abuse of discretion and whether the evidence was sufficient to support entering a domestic violence protective order. Without a proper record, we can't determine whether the trial judge erred in making evidentiary rulings or granting the protective order. Appellate courts frequently refuse to reach the merits of an appellant's claims because they failed to provide a reporter's transcript of a pertinent proceeding or a suitable substitute. (E.g., *Walker v. Superior Court* (1991) 53 Cal.3d 257, 273 ["we cannot assess the propriety of these latter determinations because as noted above the record contains no transcript of the respective

9

hearings"]; *Sui v. Landi* (1985) 163 Cal.App.3d 383, 385-386 ["When an appeal is taken on a partial clerk's transcript, the evidence is conclusively presumed to support the judgment"].) As the record stands, we've been forced to piece together the story from pleadings, reports, and Cuevas's brief. However, the actual testimony and any legal rulings surrounding the testimony and other evidence is required for meaningful review.

Under the DVPA, the trial court may issue a restraining order "for the purpose specified in Section 6220, if an affidavit or testimony and any additional information provided to the court pursuant to Section 6306, shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300, subd. (a).) The behaviors considered domestic violence that may be enjoined under section 6320 include "'molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, . . . harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members.' (§ 6320, subd. (a).)" (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264.)

The record we have would, if presented at the hearing, have supported the trial judge's conclusion that Cuevas committed acts constituting domestic abuse under the statute. The report concerning Cuevas's accusations of sexual abuse contains substantial evidence to support a finding that Cuevas repeatedly made baseless accusations of child

10

sexual assault against Macias's father as a way to obtain leverage in disputes with the mother. Most important, the child herself denied the accusation. But so did the child's grandfather, and the social worker who interviewed him found forthright and credible. The division found Cuevas's accusations unfounded, just as child welfare authorities did when Cuevas made similar accusations in 2010. In that case, Cuevas himself admitted the accusations were false. The report also indicates the child complained of repeated outbursts of anger which affected her mental well-being.

Meanwhile, the medical records Cuevas submitted to this court do not undermine the trial judge's ruling. They are, at best, ambiguous, showing his daughter suffered from a few relatively innocuous maladies like a cough and loss of appetite, some sort of rash or bumps on her inner thighs, and ear infections. At worst, they provide no support and suggest Cuevas is entangled in a conspiracy theory that is disrupting his own life as well as that of his daughter. It's notable that some of these records concern a medical condition Cuevas used as the basis for his admittedly false 2010 report of sexual abuse. To the extent the trial judge erred by excluding those records, and we emphasize the record does not even establish this ruling occurred, we would find the decision harmless. The same is true regarding the trial judge's taking judicial notice of father's prior convictions.

Cuevas cites cases in which fathers who had been falsely accused of sexual abusing of their children regained visitation rights. (*Begier v. Strom* (1996) 46 Cal. App.4th 877.) The appellate decision in *Begier* doesn't specifically address the legal issue

11

of visitation, but instead rejected malicious prosecution claims based on false accusations made in family law proceedings. (*Id.* at pp. 886-888.) In any event, the fact that some fathers have prevailed against false accusations of abuse don't help Cuevas. Though, as we noted, mother amended her petition to state sexual abuse allegations against him, the division's report doesn't support finding he committed such abuse, and the record doesn't indicate those accusations formed any basis for issuing the protective order. Instead, it appears the protective order was based on Cuevas's angry outbursts, his threats against Macias and her family, and his own false allegations of sexual abuse against the child's grandfather.

We reiterate that the flaws in the appellate record are substantial and limit our ability to provide a full review of the merits. However, the investigation by the division supports the court's ruling.

### III

### DISPOSITION

We affirm the judgment. Cuevas shall bear his own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
                                                                        J.

We concur:

CODRINGTON _____
            Acting P. J.

RAPHAEL _____
            J.

12